LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of burglary in the third degree. Upon a hearing after due notice thereof and of the invocation of the statutory law as to habitual felony offenders, at which hearing it was shown that prior to the commission of the felony in the instant case the defendant had been convicted of more than three felonies, he was sentenced to imprisonment for sixty (60) years.
There was undisputed evidence that about midnight July 6-7, 1980, police officers were on patrol near City Tire and Sales Service at 5500 First Avenue South, Birmingham, which had been closed for the night at about 5:00 P.M., and observed appellant and another black male as they were walking “less than a city block” from the place of business of City Tire and Sales Company after they had seen that a large plate glass window on the side of the front of the store had been broken out and observed a large number of tires, including fourteen new tires, in front of the store. The two “males” started to run as the patrol car arrived. One officer chased the defendant, who at the time he was walking had a tire tool in his hand, and apprehended him as he was found “crouched behind the bushes.” Another officer apprehended the other person with defendant at the time they were first observed. The officers then placed the two men into the patrol ear, took them to the tire store and the place where the plate glass window had been broken out and where the fourteen new tires were outside the store and thereafter drove them in the police car to the jail.
Soon after the arrest of the defendant and his companion, latent fingerprints were lifted from some of the glass on the side of the store where the alleged burglary was committed. According to the testimony of an X-ray technician, a known thumbprint of *842 appellant matched one of said latent fingerprints.
Appellant’s only contention for a reversal is thus stated in his brief:
“The trial court erred in allowing the State’s witness, Mr. Wayne Burrow, to testify that in his opinion the particles of glass found in the sack containing Ervin Varner’s shoes could have been of the same origin as particles of glass retrieved from the scene of the alleged burglary.”
We note that appellant’s argument in support of his quoted contention is directed solely to the question of Mr. Burrow’s qualification as an expert witness on the subject. No question is raised as to the chain of custody of the particles of glass that fell to the ground or floor from the window as it was broken or as to the particles of glass that were in the empty sack into which the shoes that appellant was wearing at the time of his arrest were placed. As to the test made by Mr. Burrow, he testified that he “determined the refractive index of the glass particles recovered from the bag which contained the left shoe and compared it with the refractive index” of particles of glass that obviously had dropped from the window that had been broken. The only ruling of the court adverse to defendant on the particular point is to be found in the following part of the direct examination of Mr. Burrow, as a witness for the State:
“Q. Well, let me ask you, Mr. Burrow, based on your experience, eight years you’ve had conducting this type of test, do you have an opinion as to whether the glass particles found in the bag, State’s Exhibit 10, the brown left shoe, as compared to State’s Exhibit 12, the piece of glass and samples you took out and ran the test on whether or not they matched up, please, Mr. Burrow?
“MR. McLAURIN [Defendant’s attorney]: May it please the Court, Your Honor, I object, because I don’t believe it has been shown this man is an expert in the field. He said he is a chemist and worked in general criminalistics, but I don’t believe it has been shown he is an expert in matching up glass particles.
“THE COURT: Overruled.
“Q. You can answer Mr. Burrow.
“A. In my opinion the refractory indices of the two glasses are consistent and they could have common origin.”
Before the ruling of the court just quoted, the witness had testified in part as follows:
“A. I am employed by the Alabama Department of Forensic Science, Birmingham Division.
“Q. And in what capacity are you employed with the Forensic Science Department, Birmingham, Alabama?
“A. I am a criminalist in trace evidence examinations.
“Q. Explain to the ladies and gentlemen of the jury and for my benefit what that is, please, sir.
“A. Trace evidence examination is the examining of small particles which may be glass particles, paint particles, hairs and fibers, soil, and any type of material that may be compared as to a probability of common origin.
“Q. Now, what type of training or education have you had in relationship to your job, please, Mr. Burrow, as a criminologist?
“A. I have a B.S. Degree in Chemistry from the University of North Alabama. And I have received training within the department for the last eight years that I have been employed with the department.
“Q. Okay. During that past eight years have you had an occasion to have physical evidence submitted to you to run tests on, please, sir, to determine the quality, the make or whatever you are testing for?
“A. Yes, sir, I have.
“Q. How many cases, please, Mr. Burrow?
“A. On many occasions.
“Q. Have you had an occasion to come down and testify in Jefferson County Court as a criminologist?
“A. I have on occasion, yes, known as a criminalist.
“Q. I’m sorry, criminalist. Now, let me ask you and show you some items if I could . . .. ”
*843 On cross-examination, the witness testified in part:
“A. When I run the refractive index or the measurement of it, it is done under a 10-X microscope objective or using a microscope for this. It is not done with the unaided eye.
“Q. Oh, I see. How many tests of this sort have you run in your eight years? Is that what you said, that you had been doing this for eight years?
“A. No, sir. This has not been my primary duty over the past eight years. I have done fifty or so examinations.
“Q. All right. Now, you said — Now, what was your opinion as to this glass?
“A. My opinion is that the refractory indices of the two glasses are consistent and that they could have common origin.
“Q. Okay. But there is no way to tell whether these little particles of glass came from the same glass that you were presented in this larger envelope, State’s Exhibit 12, is that correct?
“A. The only way that you could say that they did would be to have a large enough piece, two pieces, that you could put together and make a refractive match of the two glasses and then that way you could be certain that the two came from the same object.
“Q. But you didn’t have that, did you?
“A. No, sir, I did not.”
We think that our references to the transcript quoted above are sufficient of themselves to demonstrate that Mr. Burrow was fully qualified to testify as an expert witness as to the possible common origin of the glass of the window that was broken and the glass that apparently came from defendant’s shoe. By the cross-examination of the witness as above shown, it is made as clear as crystal, we think, that the jury was not misled into believing that the witness had in effect testified that the two specimens did in fact have a common origin, only that they could have had a common origin. Furthermore, we note such evidence was not as convincing as to defendant’s guilt as was the other evidence in the case, including particularly the matching fingerprint evidence of the fingerprint technician.
Our conclusion as to the admissibility of the testimony of Mr. Burrow as to the possible common origin of the different items of glass is the only conclusion we can reach consistent with the statutory law of Alabama and previous opinions of appellate courts on the subject. Code of Alabama 1975, § 12-21-160 provides: “The opinions of experts on any question of science, skill, trade or like questions are always admissible, and such opinions may be given on the facts as proved by other witnesses.” Whether a witness is competent to testify as an expert is an inquiry largely within the discretion of the trial judge, and appellate courts will not disturb the trial judge’s determination of expert qualifications unless there is a clear abuse of this discretion. Kozlowski v. State, 248 Ala. 304, 27 So.2d 818 (1946); Davis v. State, Ala.Cr.App., 352 So.2d 3, cert. denied, 352 So.2d 8 (1977); Gullatt v. State, Ala.Cr.App., 409 So.2d 466 (1982).
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.