The appellant, Robert Fuller Smoot, was indicted for the offense of murder and, following a jury trial, was convicted of manslaughter. He was sentenced to eight years' imprisonment.
The appellant had been drinking at Crockmier's restaurant on the afternoon of March 28, 1986. The appellant, on his drive home, struck a child riding a bicycle. *Page 183 
The victim, seven-year-old Alex Jackson, Jr., died from irreversible brain damage resulting from the collision.
 I
The appellant argues that the State failed to prove a prima facie case against him. According to Section 13A-6-3, Code ofAlabama (1975):
 "(a) A person commits the crime of manslaughter if:
 (1) He recklessly causes the death of another person."
"Recklessly" is defined under § 13A-2-2 as follows:
 "A person acts recklessly with respect to result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of § 13A-3-2, acts recklessly with respect thereto." (Emphasis added.)
The State presented evidence that the appellant had been drinking prior to the offense. Officer E.E. Howton, who was the first officer to arrive at the scene, testified that he informed Corporal Pierce that he believed that the appellant had been drinking. Howton testified that he "could smell an odor of an alcoholic beverage about [the appellant's] person" and his eyes were bloodshot. Corporal Pierce testified that Officer Howton also advised him that the appellant had stated that he "had had a couple of beers to drink." Corporal Pierce further testified that he could smell an odor "of an alcoholic beverage" about the appellant. The appellant was advised of his rights and placed under arrest for D.U.I. Thereafter, the appellant was taken to the police station, where he was again read his rights and where he signed a "waiver of rights form." A breath test was taken and the appellant registered a blood alcohol level of .168 percent.
An assistant manager at Crockmier's testified that on March 28, he was tending bar. He testified that the appellant was present at the bar for approximately two hours and drank three or four alcoholic drinks known as "screwdrivers."
The State presented evidence that the appellant was speeding through a residential neighborhood when he struck the child. A witness testified that the appellant's car was traveling at a rate of at least five miles per hour over the speed limit. Furthermore, Corporal Pierce testified that on the basis of his previous training and education, and taking into consideration the skid marks left prior to impact, estimated the appellant's speed was approximately 35 miles per hour when the brakes were locked. The speed limit in the neighborhood was 25 miles per hour.
The appellant contends that his speed and his previous alcohol consumption did not cause the victim's death. He argues that evidence was provided to show that the position of the sun might have contributed to the accident. He also argues that the evidence established that the child was riding his bike in the wrong lane of traffic and that the child turned directly in front of the car. However, the record indicates that there was conflicting testimony presented concerning the sun's possible influence in the offense. Also, despite the appellant's apparent argument of "contributory negligence," it is clear that the State proved a prima facie case of manslaughter.
 "When a person is under the influence of alcohol, his ability to drive is impaired and his is incapable of driving safely. The person's degree of intoxication is irrelevant. If a person is intoxicated to any degree, his driving capacity is diminished and he is a danger to others who may travel over the public highways. Evans v. State, 389 So.2d 567 (Ala.Crim.App. 1980)."
Pace v. City of Montgomery, 455 So.2d 180, 185 (Ala.Cr.App. 1984). See also Hanners v. State, 461 So.2d 43 (Ala.Cr.App. 1984). *Page 184 
Viewing the evidence in the light most favorable to the State, Gossett v. State, 451 So.2d 437 (Ala.Cr.App. 1984), the prosecution sufficiently proved that the appellant recklessly caused the death of Alex Jackson, Jr.
 II
The appellant maintains that the trial court committed reversible error in allowing testimony concerning his prior arrests for D.U.I. He argues that the prior incidents were too remote. He also contends that the State failed to adequately prove the convictions under Boykin v. Alabama, 395 U.S. 238,89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The record indicates that Officer E.E. Howton testified that he had recognized the appellant because of a prior incident. Officer Howton testified that on August 19, 1985, he had arrested the appellant for D.U.I., following a collision with injuries. Corporal Pierce also testified that he had recognized the appellant from the same prior incident. Officer Frederick Michaud testified that he was an accident investigator on March 29, 1981. He testified that at 7:55 a.m. he observed a vehicle, which was blocking traffic, stopped in the middle of the road. He further testified that the appellant was then arrested for D.U.I.
Lanny Stanford, an Alabama State Trooper, testified that on July 9, 1980, while he was patrolling in Lee County, he clocked a vehicle traveling at 88 miles per hour. State Trooper Stanford determined, after the driver was stopped, that the driver was intoxicated; the driver was arrested for D.U.I. and speeding. State Trooper Stanford further testified that the individual identified himself as Robert Fuller Smoot.
The prior incidents of driving under the influence by the appellant were admissible and were highly relevant to prove the recklessness of the appellant in regard to the probable consequences of his acts. Palmer v. State, 401 So.2d 266, 269
(Ala.Cr.App. 1981), cert. denied, Ex parte Palmer,401 So.2d 270 (Ala. 1981), cert. denied, Palmer v. Alabama, 455 U.S. 922,102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). Prior arrests for driving while intoxicated (one five years and the other two years prior to the offense) were admitted into evidence inPalmer, but there was no indication made to the jury that the defendant was ever convicted of these charges. The same is true of the case at hand. Thus, "the prosecution merely introduced evidence of other acts of driving while intoxicated by the defendant." Id. at 268. In holding that the prior incidents were relevant to prove the reckless indifference of the defendant, this court asserted:
 " 'If the accused is charged with a crime that required a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question the greater the likelihood that the act in question was not done inadvertently.'
 C. Gamble, McElroy's Alabama Evidence, Section 69.01(5) (3d ed. 1977)."
Id. at 269.
This court further determined in Palmer that the two prior incidents were not so remote in time as to affect their admissibility. Moreover, it was determined that their admission was a matter within the sound discretion of the trial judge.
 "The question of remote evidence was discussed in Smitherman v. State, 33 Ala. App. 316, 318, 33 So.2d 396 (1948).
 " 'Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results therefore that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course, it can be said with certainty that the *Page 185 
tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main fact.'
 "Remoteness with respect to the admissibility of evidence is a relative idea and varies in its application according to the facts of each case. Dorch v. State, 40 Ala. App. 475, 115 So.2d 287
(1959). See C. Gamble, McElroy's Alabama Evidence, Section 21.01(2) (3d ed. 1977)."
Palmer v. State, at 269.
Furthermore, as in Palmer, the appellant's claim that the prosecutor did not properly prove the prior convictions is without merit, because the transcript "gives absolutely no indication that the jury was ever informed by any means that the defendant had prior convictions" resulting from the prior arrests. Id. at 270.
 III
The appellant argues that the trial court erred in permitting evidence of speed based on skid marks to be introduced to show the vehicle's speed at the time of impact. Specifically, the appellant alleges that the use of skid marks was erroneous in that the witness stated that the total skid marks, including the skid marks made after impact, were used to determine speed. The record indicates that Corporal Pierce testified that there were skid marks left prior to impact that measured approximately 26 feet. He then stated that based on his previous training and education, after observing the skid marks made prior to impact, that the car was traveling at approximately 35 miles per hour when the brakes were locked. Corporal Pierce further testified that this figure was arrived at through computer printouts, as well as by his personal calculations. However, the court thereafter asked Corporal Pierce if he used any of the skid marks beyond the point of impact in arriving at the estimated speed, to which the witness responded that he did. The trial court therefore sustained the defense counsel's objection and instructed the prosecutor to refrain from any more questioning on that subject. The record reveals that when Corporal Pierce indicated that he used skid marks beyond the point of impact, the trial court sustained the defense counsel's objections to Corporal Pierce's estimates of speed. Thus, there is no adverse ruling for this court to review. Additionally, the prosecutor asked Corporal Pierce how many feet per second a vehicle would be traveling if it was moving at a speed of 35 miles per hour. The defense counsel then objected to any reference to 35 miles per hour, and the trial court sustained his objection.
"It is well settled that one shown to be an expert may testify as to his judgment as to the speed of an automobile predicated on skid marks made before impact. Jowers v. Dauphin, [273 Ala. 567, 143 So.2d 167 (1962)], supra; Johnson v.Battles, 255 Ala. 624, 52 So.2d 702 [1951]; Jackson v. Vaughn,204 Ala. 543, 86 So. 469 [1920]." Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716, 719 (1967). See also McWhorter v. Clark,342 So.2d 903, 904 (Ala. 1977). "The raison d'etre of [this rule of law] is that common knowledge tells us that when moving objects collide, 'they may behave in a manner which seemingly
defies all the laws of physics.' " Glaze v. Tennyson,352 So.2d 1335, 1337 (Ala. 1977).
The trial court, in the instant case, refused to allow into evidence estimated speed based on skid marks made after impact.
 IV
The appellant argues that the trial court erred in admitting hospital records. The record indicates that Dr. John Kilpatrick Peden testified that he treated the victim and testified to his condition on arrival at the emergency room, as well as his condition until he died. The record indicates that while testifying, Dr. Peden referred to his notes and to the victim's hospital records, which also contained notes made by Dr. Peden. Dr. Peden indicated that he had to refer to his notes and to the victim's hospital records which also contained many notations which were prepared by Dr. Peden. The defense counsel made no objections to Dr. Peden's testimony. Subsequently, the prosecutor moved to admit the *Page 186 
hospital records pursuant to § 12-21-5, Code of Alabama (1975), and to C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 254.01. Thereafter, the trial court asked the defense counsel if he had any objections, and the defense counsel merely responded, "Yes." The trial judge asked the prosecutor if the hospital records contained anything different from the doctor's previous testimony. The prosecutor responded, "Definitely not anything different, just a whole lot more." The hospital records were then admitted into evidence, and the defense counsel objected on the grounds of hearsay.
The appellant, in support of his argument, citesWhetstone v. State, 407 So.2d 854 (Ala.Cr.App. 1981). However,Whetstone was a vehicular homicide case in which the State sought to prove the defendant's intoxication by introducing his hospital records without a proper chain of custody having been established. This court noted:
 "We conclude that while a copy of an accused's hospital records in Alabama is admissible in criminal prosecutions, see Annot., 69 A.L.R.3d 22 (1976), and can relate to the intoxication of patients where a proper foundation is laid, see Annot., 80 A.L.R.3d 456 (1977), a hospital record cannot render evidence admissible which would otherwise be inadmissible."
Id. at 862.
The appellant's argument, in the case sub judice, that the hospital records were inadmissible on the grounds of hearsay. This contention is without merit.
 "There is a specialized business record statute in Alabama which renders admissible a certified copy of hospital records that are kept in the regular course of the particular hospital's business. Copies of these hospital records, when properly certified, may be introduced into evidence without the production of the original and without the custodian of these records being present to lay a predicate."
C. Gamble, McElroy's Alabama Evidence (3d ed. 1980 Supplement), 254.01(7) See also § 12-21-5 and § 12-21-6; § 12-21-7, Code ofAlabama (1975).
 "[A] copy of a hospital record will constitute an exception to the hearsay evidence rule where (1) the copy was properly certified by the custodian (Section 12-21-7), (2) the original hospital record was made and kept in the usual and regular course of business of the hospital, (3) it was in the regular course of business of the hospital to make and keep such record, and (4) the record was made at the time . . . such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter (Section 12-21-5). Requirements (2), (3) and (4) of this predicate bring the hospital report under the business record exception to the hearsay rule. Compare Section 12-21-5 (hospital records) with Section 12-21-43 (Business Records Act). A certified copy of an original hospital record which meets the requirements of the business records act of Section 12-21-43 constitutes an exception to the hearsay rule. Seay v. State, 390 So.2d 11, 12 (Ala. 1980); McElroy, Section 254.01(7). However, hearsay in a properly certified copy of a hospital record not shown to have been made in the regular course of business is objectionable. Whetstone, 407 So.2d at 860-61; Lowery v. State, 55 Ala. App. 511, 518, 317 So.2d 357, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975)."
Pickett v. State, 456 So.2d 330, 333 (Ala.Cr.App. 1982), affirmed, Pickett v. Bowen, 798 F.2d 1385 (11th Cir. 1986).
The record indicates that the State made no showing that the hospital records were kept or made in the regular course of business. There was also no testimony in Pickett that the hospital record was kept in the regular course of business; however, as in the case sub judice, the defendant's objection to the hospital records as hearsay did not preserve this issue for review.
 "As in Thompson v. State, 384 So.2d 1131, 1134-35
(Ala.Cr.App. 1979), cert, denied, 384 So.2d 1135
(Ala. 1980), the trial court was not called upon to determine whether the copy of the emergency room report was objectionable on grounds that *Page 187 
it was not properly shown to have been made in the regular course of business or upon any ground other than the asserted grounds of hearsay and denial of the defendant's right of confrontation."
Pickett v. State, supra, at 333.
Additionally, the appellant's objection on the ground of hearsay was not timely interposed. Wood v. State,416 So.2d 794, 799 (Ala.Cr.App. 1982). Moreover, any error in the introduction of the hospital records was harmless, as they were merely cumulative of the testimony of Dr. Peden. Rule 45B, Alabama Rules of Appellate Procedure.
 V
The appellant argues that his statements and his breath test results should have been suppressed as the products of an unlawful arrest. Corporal Pierce testified that after he spoke with Officer Howton, who informed him that he believed that the appellant had been drinking and further indicated that the appellant had stated that he had had a couple of beers, Corporal Pierce approached the appellant to speak with him. He testified that the appellant had an odor of alcoholic beverage about him. He testified that "from what I [Corporal Pierce] heard and with previous contact with Mr. Smoot, that's when I placed him under arrest and advised him of his rights." Officer Howton testified that he advised Corporal Pierce that he believed the appellant had been drinking. He further testified that the appellant was arrested for D.U.I. According to §32-5-171, Code of Alabama (1975),
 "A uniformed police officer, state trooper, county sheriff or his deputy or member of a municipal police force may arrest, at the scene of a traffic accident, any driver of a vehicle involved in the accident if upon personal investigation including information from eyewitnesses, the officer has reasonable grounds to believe that the person by violating section 32-5A-191 [the statute prohibiting driving under the influence] contributed to the accident. He may arrest such a person without a warrant although he did not personally see the violation."
The appellant notes that there was some conflicting testimony concerning a conversation between Officer Howton and Glen Dean, which was allegedly overheard by Corporal Pierce. Such discrepancies go to the weight to be accorded the testimony by the jury. Wilhite v. State, 485 So.2d 777 (Ala.Cr.App. 1985), affirmed, 485 So.2d 787 (Ala. 1986); Jones v. State,469 So.2d 713 (Ala.Cr.App. 1985).
 VI
The appellant argues that the trial court erred in failing to grant a directed verdict of acquittal. He contends that the State failed to prove that he did not have access to alcohol from the time of the accident until the arrival of the first police officer. The record indicates that following the State's case, the defense counsel moved the court to exclude the State's evidence and to direct a verdict of acquittal on the charge of murder. Thereafter, the defense counsel stated:
 "I am going to cite the following grounds, Your Honor, if the court will be very patient with me: Ground number one, the defendant would assign a prima facie case where gross negligence or gross deviation of the standard form has not been proven or even closely associated with the facts presented. Number two, the insufficiency of evidence on the indicted charge of murder. The State has presented now no statement other than the point of impact of twenty-five miles an hour which technically has even been excluded by the court in its motion. The State has not to the first degree approached what would be absolutely necessary to convict and let this case go further to a jury on the issue of murder, and that is, reaction time which would be the minimum requirement the State would travel on to even attempt the question: Could Robert Smoot minus intoxication have reacted in such a way as to prevent this tragic accident? That is critical, Your Honor, to a murder case of this nature. We have not speed. The *Page 188 
State started with two prongs, speed and intoxication. The State has not attempted to tie up to any degree that the reaction time would have saved the boy's life, and now, we have no speed to travel with. The State approached that in opening arguments, and since, the court has ruled that they have approached that with incompetent evidence or evidence that by law cannot come before this jury. On the basis, of course, of those grounds, I would also concurrently move for a mistrial because the State totally failed to tie it up. It would be my humble opinion, most respectfully, that in order to proceed with a gross deviation and gross misconduct and gross driving and knowledge of consequences and knowledge of 'If I act, consequences will be suffered,' the State has failed utterly to even approach those requirements. Your Honor, speed is out. There has been absolutely no attempt by the State to approach that question as to why or how on March 28th, the reaction time of Robert Smoot was in any way different from a reasonable person under those same circumstances. And the only way this case can go further to a jury would be for this court to rule that the evidence at this point is sufficient for the jury to draw any grounds as to what a reasonable person, a standard — a prudent person's standard would have been on that afternoon. . . .
Thus, the appellant, in stating the grounds for his motion, failed to include the issue now raised. Specific grounds of objection waive all grounds not specified. Fisher v. State,439 So.2d 176 (Ala.Cr.App. 1983); Alldredge v. State,431 So.2d 1358 (Ala.Cr.App. 1983); Cook v. State, 384 So.2d 1158
(Ala.Cr.App. 1980), cert. denied, 384 So.2d 1161 (Ala. 1980).
Moreover, the appellant has made no contention or suggestion that he was drinking during the period of time between the accident and the arrival of the first officer, nor did any witness testify to such a fact.
Glen Dean testified that, although he was unsure of the time between the accident and the police officer's first arrival, he stated that he believed the time period to be less than 30 minutes.
Officer Howton testified that he was not the first law enforcement officer on the scene, but that a police officer who was driving a motorcycle had arrived before him. Officer Howton testified that he arrived on the scene at approximately 5:45; the accident occurred at approximately 5:30. There was no evidence that any alcoholic beverages or containers were found in or around the appellant's automobile or on his person. "To infer that the appellant could have had access to alcohol during this period of time, and under the existing conditions . . . would require that common sense be laid aside." Ayers v.State, 48 Ala. App. 743, 267 So.2d 533, 536 (1972). The appellant argues that the trial court erred in accepting the testimony of State's witness Laura Shevlin, toxicologist, which allegedly concerned alcohol's affects on a person. An expert witness may base his or her opinion on facts of which he has first hand knowledge or facts assumed in hypothetical questions. C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 130.01.
 "The hypothetical question need not assume all the facts of which a finding would be warranted by the evidence. It must assume, however, enough facts to justify fairly the formation of an opinion. The content of the hypothetical question in this respect is left in measurable degree to the discretion of the trial court."
We do not find that the trial court abused its discretion in allowing Shevlin to testify in regard to the State's hypothetical situations.
Shevlin testified that "[a] toxicologist is someone who analyzes biological materials for the possible presence of alcohol, drugs, or poisons, and then interprets the meanings of those findings." She further testified that she had taken additional graduate level courses in areas relating to toxicology, such as biochemistry, pharmacology and toxicology. She stated that she had been conducting tests on samples to determine blood alcohol content for over 15 years and that she had been certified to perform blood alcohol analysis or blood alcohol *Page 189 
content analyses by the State Department of Public Health. According to § 12-21-160, Code of Alabama (1975): "The opinions of experts on any question of science, skill, trade or like questions are always admissible, and such opinions may be given on the facts as proved by other witnesses." An expert witness is anyone whose opportunity or means of knowledge in a specialized art or science is better than that of the average juror or witness. Charles v. State, 350 So.2d 730 (Ala.Cr.App. 1977). Furthermore, any objection to an expert witness on the ground that he or she lacks knowledge goes to the weight rather than to the admissibility of his or her testimony. Johnson v.State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed,378 So.2d 1173 (Ala. 1979).
 " 'Whether the qualification of the witness is sufficient is a question to be determined by the trial court, and the very nature of the test requires that its determination in particular cases be left to the sound discretion of the trial court, . . . which will not be revised on appeal, except for palpable abuse.' Jones v. State, 181 Ala. 63, 80, 61 So. 434 (1913); C. Gamble, McElroy's Alabama Evidence, Section 127.01(5) (3d ed. 1977)."
Bailey v. State, 421 So.2d 1364, 1368 (Ala.Cr.App. 1982). See also Varner v. State, 420 So.2d 841 (Ala.Cr.App. 1982); Johnsonv. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed,378 So.2d 1173 (Ala. 1979).
We do not find that the trial court abused its discretion in allowing Laura Shevlin to testify concerning the effects of alcohol on the body or in allowing her to answer the State's hypothetical questions. Furthermore, the appellant has not based his argument on any legal authority. Vinzant v. State,462 So.2d 1037 (Ala.Cr.App. 1984).
 VII
The appellant contends that five of his requested charges were correct statements of law and were not covered sufficiently in the court's oral charge. In his brief on appeal, the appellant has merely stated this issue without any argument or legal authority. Therefore, this issue is deemed waived. Vinzant v. State, 462 So.2d 1037, 1039 (Ala.Cr.App. 1984).
AFFIRMED.
All the Judges concur.