Curley James Pollard was indicted on two counts of vehicular homicide and one count of murder for the death of Richard Lyle Montgomery. He was convicted of manslaughter and sentenced to ten years in prison.
The record reveals the following: Randolph Baldwin of Discount Tire Center observed the incident while standing outside his place of business on June 6, 1986, at approximately 2:45 p.m. He saw a large tractor-trailer rig traveling eastbound into Selma on U.S. Highway 80, which is also known as Highland Avenue. He testified that the rig started drifting into the westbound lanes and began to go totally out of control. He testified that the rig started to move into a jackknife position. He stated that, after the rig hit a curb, the landing gear separated from the trailer and the rig went back across all four lanes of traffic. The rig finally stopped in a service road area. The rig was in a jackknife position when it stopped. Baldwin testified that, when the truck started moving across the highway, he observed a motorcycle in the westbound lane. He saw the driver of the motorcycle start laying his bike down. He then saw the motorcycle run into some wheels of the tractor-trailer while the rig was still moving. He testified that the rig appeared to be bouncing the victim and the bike up and down. The rig carried the victim into the service road area and then he was thrown out. Baldwin testified that the appellant walked toward the sales floor of the tire center after the incident. Baldwin smelled a strong odor of alcohol on the appellant's breath. He stated that, based on the appellant's walk, eyes and speech, he was of the opinion that the appellant was under the influence of alcohol. He further testified that the speed limit for U.S. Highway 80 was 40 mph and estimated the speed of the appellant's truck to be between 50 and 55 mph.
Edward Moon was standing outside the Discount Tire Center building when he observed the incident. He testified that U.S. Highway 80 has two eastbound and two westbound lanes. He stated that the rig *Page 595 
went out of control and traveled across the eastbound lane into the westbound lane. He also observed the truck hit a curb and move into a jackknife position. He testified that the victim tried to lay his bike down and then started sliding under the tractor wheels. He estimated the rig's speed to be between 45 and 55 mph.
Richard Julian was standing in the third bay door of Discount Tire Center when he observed the incident. He testified that he saw the truck bang up on a curb and move into a jackknife position. He testified that the truck was moving erratically. He estimated the truck's speed between 40 and 45 mph. He stated that, after checking on the victim, he walked over to the truck. The appellant, Pollard, was reaching down in his seat and picking up a vodka bottle, a Coke bottle and a Gatorade bottle. He testified that Pollard asked him what he should do with the bottles and he told Pollard to throw them over a nearby fence. Julian smelled a strong odor of alcohol on the appellant. He further testified that Pollard "couldn't hold himself stable" (R. 357) and that, in his opinion, the appellant, Pollard, was under the influence of alcohol.
Bobby Spears testified that he observed the tractor-trailer rig traveling through the intersection of U.S. Highway 80 and Bell Road at approximately 60-65 mph a few minutes prior to the incident.
Sergeant Jerry Ward of the Selma Police Department responded to the accident call. He testified that he smelled the odor of alcohol coming from Pollard's breath and clothes. He also testified that the appellant's eyes were glazed and he had a slight instability when he walked. He arrested Pollard for DUI. The results of a breathalyzer test revealed that the appellant's blood alcohol content was .134. The victim died as a result of the injuries he sustained in this accident.
The appellant testified that he drank two ounces of vodka on the morning of the accident. He also testified that he drank a beer at approximately 11:30 a.m. He stated that the odor on his clothes came from a chemical called parathon which he spilled on himself while loading and unloading the truck earlier in the day. He testified that he was trying to stop his truck, and when he applied the brakes, the truck started to skid. He admitted to throwing a vodka bottle, a Coke bottle and a Gatorade bottle over a fence.
The appellant raises five issues on appeal.
 I
The appellant first contends that the State violated the principles set forth in Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) because the district attorney used 14 of his 15 peremptory strikes to remove blacks from the jury panel. We have given this issue the same thorough review that all litigants are entitled to on appeal, despite the appellant's cursory argument in brief and his failure to articulate any specific reasons for his alleged claim of racial discrimination in the jury selection process. The record is unclear as to exactly how many black jurors served on the panel; however, it does appear that at least three black jurors and one black alternate served on the panel hearing this case.
The prosecutor articulated the following reasons for these peremptory strikes: (1) information from police department and psychological profile done by a Dr. Blanton, who assisted in striking the jury, indicated that the juror was very emotional; (2) juror was a truck driver and the defendant was a truck driver; (3) juror's cousin drove a tractor-trailer rig; (4) four traffic offenses, two accidents and defendant's attorney previously represented juror's father in an alcohol-related offense; (5) law enforcement recommended strike, unemployed, two prior convictions and would not understand complex issues; (6) truck driver, involved in three accidents and prior traffic offenses; (7) seventeen misdemeanors, ten traffic accidents and no driver's license; (8) juror's son drove an 18-wheeler; (9) nine traffic offenses; (10) former truck driver, seven accidents and four traffic offenses; (11) law enforcement recommended strike, five traffic accidents and one traffic offense; (12) unemployed and *Page 596 
prior theft conviction; (13) law enforcement recommendation and juror involved in litigation years earlier against county and city concerning voting rights during which time prosecutor represented the City of Selma; and (14) very emotional and prior traffic offenses. The State also struck a white juror who had four traffic offenses, two accidents, and whose ex-wife was previously represented by the prosecutor in divorce and contempt proceedings. The prosecutor stated that the latter juror was considered very carefully. The record also indicates that none of the remaining black jurors possessed traffic or misdemeanor violations. The prosecutor also stated that the State had planned to strike a white juror who was very emotional and had been involved in four accidents, but this juror was struck by the appellant.
We find that the record sufficiently demonstrates that the State did not exercise its peremptory strikes in a racially discriminatory manner. "Any inferences arising from the use of peremptory strikes to remove blacks should be viewed together 'with other relevant circumstances' to determine whether purposeful discrimination has occurred." Currin v. State,535 So.2d 221, 224 (Ala.Crim.App. 1988) (citing Batson,476 U.S. at 106, 106 S.Ct. at 1723). The record indicates that the State struck a non-black juror for substantially the same reasons as the black jurors were struck. Such evidence of neutrality may overcome the presumption of discrimination. Ex parte Branch,526 So.2d 609 (Ala. 1987); Ward v. State, 539 So.2d 407
(Ala.Crim.App. 1988). This record also indicates that the jurors remaining on the panel had not been involved in traffic accidents or traffic offenses or had significantly fewer traffic offenses than the jurors struck by the State for that reason. The State also struck several jurors based on prior convictions. Strikes based on prior criminal convictions have been held to be race neutral. Ward; Bryant v. State,516 So.2d 938 (Ala.Crim.App. 1987). We also note that the reasons given for striking a juror are not required to rise to the level justifying a challenge for cause. See Ex parte Lynn,543 So.2d 709 (Ala. 1988).
The trial court's findings are to be given great deference on appeal. Batson, 476 U.S. at 98, 106 S.Ct. at 1723; Lynn. An appellate court may only reverse the trial court's findings if they are clearly erroneous. Branch; Lynn. We find that, based on the particular facts and circumstances of this case, the trial court did not err in finding that the prosecutor's peremptory strikes were based on considerations other than race.
 II
The appellant, Pollard, argues that the trial court erred in denying his motion to suppress the results of his breathalyzer test and any of his statements referring to his driving while intoxicated because he was unlawfully arrested.
The record reveals that Sergeant Ward first observed the appellant in the Discount Tire Center building. He smelled an odor of alcohol on the appellant's breath and also observed a slight instability in the appellant's walk. Ward testified that the appellant's eyes were glazed. After smelling the alcohol on the appellant's breath and clothes, Sergeant Ward told the appellant that he would have to go to the station for a breathalyzer test. Ward did not tell the appellant he was under arrest at that moment, but he did inform the appellant that he was under arrest for DUI approximately one minute later. Ward stated that he told the appellant he was under arrest for DUI prior to patting him down and placing him in the police car. Ward also testified that he did not discuss any facts about the incident with the appellant at that time. The record does not contain any statements made to Sergeant Ward by the appellant between the time Ward told him he was under arrest and the time Ward informed him of the charge.
At the outset, we note that Sergeant Ward clearly had probable cause to arrest the appellant for DUI. See Smoot v.State, 520 So.2d 182 (Ala.Crim.App. 1987); Richardson v. Cityof Trussville, 492 So.2d 625 (Ala.Crim.App. 1985). We also find that the trial court did not err in denying the *Page 597 
appellant's motion to suppress based on an alleged illegal arrest. The record reveals that the appellant was arrested for DUI prior to being given the breathalyzer test. See Sheffieldv. State, 522 So.2d 4 (Ala.Crim.App. 1987) and authorities cited therein. The motion to suppress was properly denied.
 III
The appellant contends that the court erred in admitting the results of the appellant's breathalyzer test because a proper predicate was not laid. Counsel's argument was previously addressed in Terry v. City of Montgomery, 549 So.2d 566
(Ala.Crim.App. 1989). We find that the State laid the proper predicate for the admission of the test. Furthermore, appellant's contention that the State failed to "connect up" the proper predicate "chain" has no merit. (Appellant's brief, page 19).
 IV
The appellant, Pollard, contends that the trial court erred in allowing toxicologist Laura Shevlin to testify concerning the effects of a .134 blood-alcohol content because such testimony was beyond her expertise. The appellant failed to cite any legal authority for this position and, therefore, has waived this argument for appellate review.
Even if this argument had not been waived, we find that it has no merit. The appellant was allowed to examine the witness in a lengthy voir dire and conducted a lengthy cross-examination. The appellant's objection to Shevlin's expert testimony based on lack of knowledge is a question of weight and not one of admissibility. Smoot. We find that her testimony was properly admitted. The appellant's contention that the trial court abused its discretion in allowing Shevlin to testify in response to the State's hypothetical questions is likewise without merit and was previously addressed by this court in Smoot.
 V
The appellant finally contends that the evidence is insufficient to sustain his conviction for manslaughter because the State failed to prove that he acted with reckless disregard and failed to prove anything more than an unfortunate accident.
 "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of section 13A-3-2, acts recklessly with respect thereto."
Ala. Code § 13A-2-2(3) (1975).
The evidence indicates that the appellant was drinking prior to the incident. Several witnesses testified that they smelled alcohol on his breath. The result of his breathalyzer test was .134. There was evidence that the appellant had a vodka bottle in his truck which he threw away shortly after the incident. Several witnesses testified that the appellant was driving over the speed limit prior to the incident. The record contains sufficient evidence of a reckless disregard on the part of this appellant.
"The function of this court is not to determine whether the evidence is believable beyond a reasonable doubt, but to decide whether there is legal evidence from which a jury could by fair inference find the defendant guilty." Pennington v. State,421 So.2d 1361, 1362-63 (Ala.Crim.App. 1982). See also Nails v.State, 549 So.2d 572 (Ala.Crim.App. 1989). Although there may be conflicting evidence, any conflict in the evidence presents a question for the jury. Hughes v. State, 412 So.2d 296
(Ala.Crim.App. 1982); Gullatt v. State, 409 So.2d 466
(Ala.Crim.App. 1981). Based on these well-settled principles, we find that the trial court properly denied the appellant's motion for judgment of acquittal. *Page 598 
For the reasons stated above, this case is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.