Roosevelt Rothchild was indicted for two offenses: (1) sexual abuse in the first degree in violation of § 13A-6-66, Code of Alabama 1975; and (2) assault in the first degree in violation of § 13A-6-20, Code of Alabama 1975. The jury found the appellant "guilty of the lesser included offense of sexual abuse in the second degree," Ala. Code § 13A-6-67
(1975), and "guilty of the lesser included offense of assault in the second degree," Ala. Code § 13A-6-21 (1975). The trial judge sentenced the appellant to fifteen (15) years in the state penitentiary, as a habitual felony offender, and ordered the appellant to pay designated amounts to both the Alabama Crime Victims Compensation Fund and to the Alabama Medicaid Agency.
On March 26, 1988, Officer Otis Porter of the Mobile Police Department observed the victim, G.E., in the back seat of a car parked at the Seven-Eleven convenience store on Michigan Avenue in Mobile, Alabama. Officer Porter noticed something was wrong with the victim. He saw that she was bleeding and that there was blood on the back seat, so he called for the paramedics. Officer Porter tried to speak with the victim, but he stated that she was incoherent and intoxicated.
The victim was transported by ambulance to the University of South Alabama Medical Center (USAMC) in Mobile, Alabama. Dr. Timothy George Day observed her at the hospital and determined that she had lacerations to the rectum and the vagina, most likely caused by a "blunt foreign object," not likely "part of the human body." (R. 8-13). *Page 983 
The victim underwent three surgeries, including a colostomy, which were performed by Dr. Day and Dr. Henry Corden West of USAMC. Both physicians testified, over the appellant's objection, that had the victim not received treatment she quite possibly could have died.
Sergeant Steven Arthur of the Mobile Police Department investigated the incident. He first tried to speak with the victim while she was in the hospital. He found her to be incoherent and under the influence of medication from surgery. He spoke to her again about two or three weeks later. At this time she told Sergeant Arthur that this appellant was one of the individuals who injured her. Later, she identified the appellant in a "photo spread" as the one who shoved a wine bottle into her rectum. (R. 41).
 I
In order for a court of this State to proceed in a criminal matter, it must have both jurisdiction and venue. Jurisdiction can be broken down into two parts: (1) subject matter jurisdiction; and (2) personal (over the person) and in rem (over the property) jurisdiction.
The "subject matter" in the criminal setting is the crime itself. Therefore, if the crime is committed in this State, our courts have subject matter jurisdiction.
If a crime is committed in this State, our courts also have jurisdiction over the person. Jurisdiction over property rarely arises in criminal matters, but a reasonable statement would be that, if property is illegally taken from this State or illegally brought into this State, our courts would have jurisdiction over this as well.
The appellant contends that the Mobile County Circuit Court lacked subject matter jurisdiction over this case. He further contends that venue was not proper in Mobile County. The appellant claims that the State failed to prove that the crime occurred in either Mobile County or in the State of Alabama. As a result, the appellant claims that the verdict and judgment against him is void and should be set aside.
The issues of venue and subject matter jurisdiction are closely intertwined. In fact, some courts have held that venue also "involves" subject matter jurisdiction. See 22 C.J.S. Criminal Law § 173 (1961). Other courts have held that venue "relates to practice and procedure and not jurisdiction." Id.
The better view is stated in American Law Reports as follows: "Although the terms 'jurisdiction' and 'venue' are often used interchangeably in criminal cases, they are clearly distinguishable. Jurisdiction refers to the judicial power to hear and determine a criminal prosecution, whereas venue relates to and defines the place where a prosecution is to be brought or tried." Annotation, 11 A.L.R. 4th 704, 705 (1982). In short, venue is established by proof showing the county in which the crime occurred, 22 C.J.S. Criminal Law § 172 (1961), while jurisdiction is the power of a given court to adjudicate the merits of a given case. Id. at § 107. See also Johnson v. State, 16 Ala. App. 64,75 So. 270 (1917).
Corpus Juris Secundum further describes subject matter jurisdiction as follows:
 "[J]urisdiction of the subject matter in a criminal case is the power to hear and determine cases of the general class to which the particular case before the court belongs. Jurisdiction of the subject matter in a criminal case is conferred by law. Thus, if a court has jurisdiction of the crime charged, it has jurisdiction of the subject matter."
22 C.J.S. Criminal Law § 108 (1961).
 A
We must first determine if the issues of subject matter jurisdiction and venue were properly preserved for our review.
The record discloses that before this trial the appellant moved for a directed verdict, but the grounds for the motion were not stated. The motion was denied by the trial court.
At the close of the State's evidence, the appellant again moved for a directed verdict on the ground that the State failed to prove the crime occurred in the County of *Page 984 
Mobile, Alabama. The State recalled Sergeant Arthur of the Mobile Police Department. Sergeant Arthur had previously testified that he escorted the victim to several cemeteries. She could not positively identify at which cemetery the attack occurred, but she stated that Magnolia Cemetery looked familiar. Sergeant Arthur testified that all of these cemeteries to which he took the victim, including Magnolia, were in Mobile County, Alabama. (R. 74).
The appellant then restated his motion for directed verdict on the same grounds, and the trial court then denied the same.
The appellant raised his motion on the same grounds a fourth time at the close of all the evidence and a fifth time after the jury retired. On both of these latter occasions, the trial court again denied the motion.
Objections based on defects in the commencement of the proceeding or in the charge for which a party seeks review must be asserted by pre-trial motion. A.R. Cr.P. Temp. 16.2(a) (1983). Subject matter jurisdiction is exempted from this rule, and it may be raised at any time. In fact, it may be raised for the first time on appeal. A.R.Cr.P. Temp. 16.2(d).
Venue, on the other hand, is properly preserved by a pre-trial motion. The appellant did make a handwritten pre-trial motion for directed verdict (R. 15), but, as stated above, the grounds are not set out in the record.
The appellant, in his brief, directs this court to the comments of Temporary Rule 16.4, A.R.Cr.P. 1983. The comments state that a trial judge's ruling on venue may be postponed until trial. A.R.Cr.P. Temp. 16.4 comment (1983), quotingUnited States v. Callahan, 300 F. Supp. 519 (S.D.N Y 1969). In the case sub judice, however, there is no evidence that the trial judge chose to postpone a motion based on venue. In fact, the only pre-trial motion was one for a directed verdict with the record revealing no grounds therefor. Thus, assuming that this motion was premised on lack of venue, the trial judge denied the motion, rather than postponing it.
 B
In order for a circuit court in Alabama to hear a case, it must have jurisdiction of the cause at issue. The Supreme Court of Alabama has previously held that a court must have jurisdiction over both the person and the subject matter and the two must "concur" for the court's judgment in a criminal prosecution to stand. See Goulden v. State, 292 Ala. 704, 299 So.2d 325 (1974).
The Constitution of Alabama states that "[t]he circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law." Ala. Const. Amend. 328, § 6.04(b) (1901). The Code of Alabama states that, in criminal matters, "[t]he circuit court shall have exclusive original jurisdiction of all felony prosecutions. . . ." Ala. Code §12-11-30(2) (1975).
Therefore, for a circuit court in this State to have subject matter jurisdiction, the State must prove beyond a reasonable doubt that a felony was committed in Alabama.[1] Both of the crimes for which the appellant was indicted in the case sub judice were class C felonies. See Ala. Code §§13A-6-21(b) and 13A-6-66(b) (1975).
 C
Venue requirements have also been codified in Alabama. The primary rule of law is set out in § 15-2-2, Code of Alabama 1975. That section states as follows:
 "Unless otherwise provided by law, the venue of all public offenses is in the county in which the offense was committed."
Another section of the venue statute states that, if a crime is committed partly in one county and partly in another, venue is proper in either county. Ala. Code § 15-2-6 (1975).
If a crime is committed so near the boundary of two counties so that it is impossible to determine in which county the *Page 985 
crime occurred, venue is proper in either. Ala. Code §15-2-7 (1975). Additionally, if a crime is committed in another state but was commenced in a county of Alabama, venue is proper in that county. Ala. Code § 15-2-3 (1975).
 D
The State has the burden of proving both venue and jurisdiction. See Stokes v. State, 373 So.2d 1211,1215-16 (Ala.Cr.App.), cert. denied, 373 So.2d 1218
(Ala. 1979) (state must prove venue beyond a reasonable doubt). Where there is some evidence tending to prove that a court has jurisdiction, the question of venue becomes a question for the jury. Creech v. State, 508 So.2d 302, 303 (Ala.Cr.App. 1987); Agee v. State, 465 So.2d 1196, 1204
(Ala.Cr.App. 1984); Horsley v. State, 476 So.2d 623,624 (Ala.Cr.App. 1983), affd, 476 So.2d 626 (Ala. 1985); Baldwin v. State, 456 So.2d 117, 121
(Ala.Cr.App. 1983), affd, 456 So.2d 129 (Ala. 1984),affd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300
(1985).
The State need not show by direct evidence that the crime was committed in Mobile County, Alabama; circumstantial evidence will suffice. Creech v. State, 508 So.2d 302, 303
(Ala.Cr.App. 1987). See also Lewis v. State,461 So.2d 9, 11 (Ala. 1984); Allen v. State, 374 So.2d 447
(Ala.Cr.App. 1979). Therefore, if the State offered enough evidence to prove that the crime at issue was committed in Mobile County, it also met its burden of proving that the crime was committed in Alabama. See Porter v. State,520 So.2d 235, 236 (Ala.Cr.App. 1987) (judicial notice that Mobile County is in Alabama).
In the case sub judice, the State offered testimony that both the appellant and the victim were residents of Mobile, Alabama. The victim testified that she, the appellant, and a third individual had ridden around Mobile for several hours. The crime was investigated by the Mobile Police Department. The victim was spotted at the Seven-Eleven on Michigan Avenue in Mobile, Alabama, and was transported to a Mobile hospital by a Mobile ambulance. Sergeant Arthur stated that all the cemeteries which were shown this victim were in Mobile, Alabama.
Although not part of the State's case, the appellant took the stand and testified in his own behalf. He stated that he and the victim had ridden around Mobile, Alabama, for several hours. He also stated that they bought three bottles of wine at stores in Mobile and visited an acquaintance of his in Mobile on two occasions. The appellant also stated that he found the victim lying in the street across from the Seven-Eleven which is located in Mobile, Alabama.
We therefore hold that the "State presented sufficient evidence from which the [trial] jury could have reasonably inferred that the offense occurred in Mobile County."Creech v. State, 508 So.2d 302, 304 (Ala.Cr.App. 1987).
 II
The appellant next contends that the trial court's refusal to allow the appellant to testify with reference to the victim's testimony at the district court level was error.
On cross-examination, the victim testified that she recalled her testimony in district court, but she denied that she ever stated that the appellant was not the person who injured her. (R. 36)
Then, on direct examination of the appellant, his counsel asked if the victim denied in district court that he was the assailant. That testimony proceeded as follows:
 "Q. Let's go back to her appearance in District Court. When she was in District Court, did she make any statements about whether you were or were not the one who did anything to her?
 "A. Yes, she did. She indicated several times when the State asked her in court, said, 'What did Roosevelt Rothchild do?' she said 'Nothing,' and he asked her again and she said 'Nothing,' and then he asked her a third time and she said 'Nothing.' So my lawyer objected. He said, 'He is trying to make the witness say what he wants her to say.' She said — During that time, when they were arguing between the judge and the State and my lawyer, *Page 986 
her mama whispered to her and told her, said Roosevelt Rothchild and Greg Juzang — that's when my name was mentioned —
 MR. LADNER: I am going to object to that, Your Honor, and move to exclude.
"THE COURT: Sustained. Granted."
(R. 81.)
Questioning one witness about another witness's prior inconsistent statements may be proper. See C. Gamble,McElroy's Alabama Evidence §§ 155.02(1) 157.01(1) (3rd ed. 1977). But, as with any other issue, the challenging party must properly preserve the issue at the trial level before this court will entertain the merits of the appellant's contentions. Saffold v. State, 485 So.2d 806, 807
(Ala.Cr.App. 1986); Reeves v. State, 456 So.2d 1156,1160 (Ala.Cr.App. 1984).
In the case sub judice, the appellant neither excepted to the trial judge's sustention of the State's objection nor sought to make an offer of proof regarding the testimony at issue.See Reeves, supra; Freeman v. State,453 So.2d 776, 777 (Ala.Cr.App. 1984). Further, the appellant failed to establish a predicate for this line of questioning.
Therefore, there is nothing before this court on which we could predicate error. C. Gamble, McElroy's AlabamaEvidence § 425.01(5) (3rd ed. 1977).
 III
At the trial of the case sub judice, the State introduced two physicians, Doctor Day and Doctor West, who treated the victim. Both physicians, over the appellant's objection, testified that the victim's injury carried with it a high rate of infection and that had she not received treatment she could have died. (R. 10 62).
When Dr. Day was asked about the probable result if the victim had not received treatment, the appellant objected, stating that any answer would be "pure speculation." (R. 10). When Dr. West was asked the same question, the appellant stated, "Your Honor, I am going to renew my objection to this line of questioning." (R. 61-62).
The trial judge overruled both objections. The appellant now contends that these rulings constituted reversible error. We do not agree.
First of all, our review is limited to the grounds stated by the appellant at trial. See Walker v. State,523 So.2d 528, 535 (Ala.Cr.App. 1988); Owes v. State,512 So.2d 797, 799 (Ala.Cr.App. 1987). The question for our review then is whether the testimony by both doctors was "pure speculation."
Physicians, when testifying in a judicial proceeding, are commonly considered experts in the areas for which they are trained. The appellant did not challenge the qualifications of either of the physicians. Thus, we must assume that the physicians were, in fact, experts. This position in the case sub judice is reinforced since both physicians had the opportunity to observe the victim and the wounds for which she was treated. See Smoot v. State, 520 So.2d 182, 188
(Ala.Cr.App. 1987); C. Gamble, McElroy's AlabamaEvidence § 130.01 (3d ed. 1977).
As stated in Smoot, one expert witness may base his opinion on facts of which he has firsthand knowledge.Smoot, 520 So.2d at 188; Hollis v. Scott,516 So.2d 576, 579-80 (Ala. 1987). When a treating physician stateswhat could have happened, the extent of his knowledge goes to the weight of the testimony and not to the admissibility. Smoot, 520 So.2d at 189.
Where a witness is more qualified than the trier of fact to deduce an opinion or conclusion on a given matter, he should be allowed to testify as to that matter. See C. Gamble,McElroy's Alabama Evidence § 127.01(5) (3rd ed. 1977). This view is clearly set forth in the Alabama Code: "The opinions of experts on any question of science, skill, trade or like questions are always admissible and such opinions may be given on the facts as proved by other witnesses." Ala. Code § 12-21-160 (1975) (Emphasis added.)
Both physicians stated that, based on the type injuries which this victim suffered, *Page 987 
there was a high probability that she would have died had she not received treatment. Attending physicians arealways in a better position to assess the seriousness of their patient's injuries. Therefore, their opinions as here challenged were properly admitted at trial.
We also note that the attending physicians' testimony or opinions did not go to the ultimate fact in issue. Their testimony only described the seriousness of this victim's injuries. The physicians in no way testified that this appellant caused those injuries. See Sasser v. State,494 So.2d 857, 861 (Ala.Cr.App. 1986).
 IV
The appellant lastly contends that his conviction was against the great weight of the evidence.
At the close of the State's evidence, the appellant moved to dismiss the indictment and the State's case. He based his grounds on lack of jurisdiction and venue and the failure of the State to produce the alleged dangerous instrument, i.e., the bottle, which caused the victim's injuries. (R. 68, 70.) The trial judge denied this motion. (R. 75.)
At the close of all the evidence, the appellant made a motion to exclude on the grounds of lack of jurisdiction and failure of the State to make out a prima facie case. Again, the trial judge denied the motion. (R. 110.)
When the jury retired to deliberate, the appellant raised a motion for directed verdict without stating grounds therefor. The trial judge denied the motion. (R. 129.)
The appellant's arguments regarding jurisdiction and venue have heretofore been addressed in full and will not be restated. Our discussion of the jury verdict will thus focus on the crimes for which the appellant was convicted.
When an accused is convicted by a unanimous vote of a petit jury, the verdict comes to us with a presumption of correctness. It is not the function of this court to reweigh the evidence on appeal. Additionally, we will view the evidence in the light most favorable to the State. Cumbo v.State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979).
Our view is limited to the issue of whether a jury could by fair inference find the appellant guilty beyond a reasonable doubt based on legal evidence presented at trial. Howell v.State, 431 So.2d 1326, 1328 (Ala.Cr.App. 1982), rev'don other grounds, 431 So.2d 1328 (Ala. 1983); Crumptonv. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert.denied, 402 So.2d 1088 (Ala. 1981); Nobis v.State, 401 So.2d 191, 198 (Ala.Cr.App.), cert.denied, 401 So.2d 204 (Ala. 1981).
 A
The petit jury found the appellant guilty of assault second degree and sexual abuse second degree.
Assault in the second degree is set out in § 13A-6-21, Code of Alabama 1975, as follows:
 "(a) A person commits the crime of assault in the second degree if:
 (1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person; or
 (2) With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or dangerous instrument; or
 (3) He recklessly causes serious physical injury to another person by means of a deadly weapon or dangerous instrument. . . ." (Emphasis added.)
Subsection (a)(3) requires a lesser mens rea than (a)(1) or (2). The first two require a showing of "intent" while the latter requires a showing that the accused acted recklessly. To affirm a conviction for assault in the second degree, we therefore need only find that the lesser conduct was committed by this appellant.
First, there must be ample evidence for the petit jury to determine that the appellant "caused" the victim's injuries. The appellant claims that the victim was very unreliable. He claims that she was intoxicated at the time of the alleged attack and that she was not a reliable witness. *Page 988 
Ample evidence was introduced at trial that the appellant and the victim had been drinking all day on March 26, 1988, the date in question. Officer Porter of the Mobile Police Department observed the victim in the appellant's automobile. It was his opinion that she was intoxicated. (R.46.)
Dr. Stonewall Stickney, a staff psychiatrist with Searcy Hospital, also testified for the State. He examined the victim in 1982 and 1984. He stated that the victim suffered from brain damage caused by an automobile accident when she was a child. (R. 64, 65.) He stated that he did not find the victim to be a reliable witness, "and she was capable of giving dishonest information." (R. 66.)
This testimony must be balanced with the other evidence as heard by the jury in this case. The victim herself testified. She stated that she, Greg Juzang, and the appellant stopped at a graveyard so that she could use the bathroom. She stated that Greg Juzang held her down as the appellant broke a wine bottle and cut her in the "behind with it." (R. 24-25.)
Two weeks after the victim was released from the hospital, she spoke with Sergeant Arthur of the Mobile Police Department. She told Sergeant Arthur that this appellant injured her. She also picked the appellant from a "photo spread." (R. 40-41.)
We find, based on all of the evidence presented to the petit jury, that the jury could fairly infer beyond a reasonable doubt that this appellant was the one who injured this victim.Cumbo, supra.
Second, we must determine if a bottle can be a "deadly weapon or dangerous instrument." This court has held before that an instrument may not be a deadly weapon or dangerous instrument per se, but it may become such a weapon by the manner in which it is used in a given situation. Davis v. State,470 So.2d 1340, 134142 (Ala.Cr.App. 1985); Helton v.State, 372 So.2d 390, 393 (Ala.Cr.App. 1979). We find that the insertion of portions of a broken bottle into the rectum and vagina of another person clearly made that bottle a dangerous instrument.
Third, the victim must have suffered "serious physical injury." Here, the two treating physicians, Dr. Day and Dr. West, testified that the victim suffered multiple lacerations to the rectum and vagina. These injuries necessitated three separate surgeries, including a colostomy. It cannot be seriously contended that the victim's injuries were not "serious," and thus we hold accordingly. See Ala. Code § 13A-1-2(9) (1975).
Fourth, we must determine if the jury could reasonably and fairly infer beyond a reasonable doubt that the appellant's conduct was "reckless." This term is defined in § 13A-2-2, Code of Alabama 1975, as follows:
 "(3) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. . . ."
Unless a person is shown to be insane or incompetent and incapable of determining right from wrong, it is reasonable for a petit jury to infer beyond a reasonable doubt that insertion of a broken bottle into the rectum of another human being, at a minimum, constitutes such recklessness.
Therefore, for the reasons stated, the appellant's conviction for assault in the second degree is not against the great weight of the evidence and must stand.
 B
The petit jury also returned a verdict of guilty against the appellant for sexual abuse in the second degree.
Sexual abuse in the second degree is set out in §13A-6-67, Code of Alabama 1975, as follows:
 "(a) A person commits the crime of sexual abuse in the second degree if: *Page 989 
 (1) He subjects another person to sexual contact who is incapable of consent by reason of some factor other than being less than 16 years old. . . ."
"Sexual contact" is defined as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party." Ala. Code § 13A-6-60(3) (1975). "Sexual contact" was further explained in Phillips v. State, 505 So.2d 1075
(Ala.Cr.App. 1986), where this court stated that the intent to do the "sexual contact" for the purpose of sexual gratification "may be inferred" by the jury from the act itself."Id. at 1078, quoting Ex parte Cofer,440 So.2d 1121, 1124 (Ala. 1983).
The cause sub judice is distinguishable fromPhillips, supra. In Phillips, the victim was a minor and the perpetrator was an adult. In the cause at hand, both the victim and the appellant were adults. Therefore, under the facts of this cause the State must prove that the act of inserting the broken bottle was done without the victim's consent.
As previously stated, the State presented ample evidence that the victim was both intoxicated at the time of the offense and that she suffered from brain damage. Neither of these factors standing alone, however, shows beyond a reasonable doubt that the victim was incapable of consent.
On cross-examination of the victim by appellant's counsel, the victim stated that she did not do anything to stop the appellant from causing her injuries. She stated: "I didn't say nothing or do nothing. I was just there." (R. 33.)
Thus, arguendo, the State failed to establish absence of consent or "ineffective consent." See
Ala. Code § 13A-2-7(c) (1975). However, our criminal code makes clear that consent may be a defense, but that consent without limits is unreasonable.
 "(a) In general. The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent negatives a required element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense."
Ala. Code § 13A-4-7(a) (1975). Thus, if the victim is not incapable of consent, it would appear that consent would be a valid defense to sexual abuse in the second degree.
Section 13A-2-7, Code of Alabama 1975, goes further, however, in subsection "b".
 "(b) Consent to bodily harm — When conduct is charged to constitute an offense because it causes or threatens bodily harm, consent to such conduct or to the infliction of such harm is a defense only if:
 (1) The bodily harm consented to or threatened by the conduct consented to is not serious. . . ." (Emphasis added.)
This subsection simply states what common sense dictates. No reasonable person in charge of his or her faculties would ever consent to having a broken bottle inserted into his or her rectum. On the other hand, if the victim was not in charge of her faculties, she no doubt would be incapable of granting effective consent.
Therefore, we find that the petit jury below could reasonably and fairly infer that this appellant is guilty beyond a reasonable doubt of sexual abuse in the second degree.
For the reasons stated, the judgment of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only.
[1] The appellant does not challenge personal jurisdiction on appeal; therefore, the remainder of this opinion, when referring to jurisdiction, will be limited to subject matter jurisdiction. *Page 990