Appellant, Jerry L. Bailey, was indicted for murder, in violation of § 13A-6-2, Code of Alabama 1975. The pertinent part of the indictment is as follows:
 "The grand jury of said county charge that . . . JERRY L. BAILEY . . . did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said JERRY L. BAILEY, and did thereby cause the death of Anthony Threatt by operating a motor vehicle in excess of posted limits while under the influence of alcohol and thereby striking with his vehicle the vehicle in which the said Anthony Threatt was a passenger (driver) in violation of Section 13A-6-2 of the Alabama Criminal Code. . . ."
A jury found Bailey guilty of the lesser included offense of manslaughter, and the trial court sentenced him to 10 years' imprisonment. The sentence was split: appellant was to serve one year in the penitentiary, and the balance of the term was suspended pending two years' probation. Appellant appeals, raising two issues.
The state's evidence disclosed that, around 9:30 p.m. on December 26, 1987, appellant was driving his automobile east on Interstate Highway 20 in the city of Birmingham. The highway was wet and there was a drizzling rain, but the highway was well-lighted and visibility was good. The speed limit was 55 miles per hour. While proceeding, in his automobile, along a straight stretch of the highway at a speed estimated by eyewitnesses to be between 75 and 90 miles per hour, Bailey, without applying the brakes, rammed into the rear of an automobile driven by Anthony Threatt, causing Threatt's vehicle to overturn and come to rest in the grassed median of the highway. As a result of the impact, Threatt was thrown from his vehicle and was severely injured. He died from his injuries shortly thereafter. After striking Threatt's automobile, Bailey's automobile also struck another vehicle, causing it to collide with a guard rail. After the collision, Bailey's automobile came to rest on the right side of the highway. Bailey suffered minor injuries and, when he was removed from his automobile, smelled of alcohol. He was the only occupant of his automobile at the time of the collision. A blood alcohol test, performed on Bailey at a local hospital a short time later, disclosed a .11% blood alcohol content.
Bailey did not testify; however, he presented several witnesses who testified that he had a good general reputation in the community and among his fellow workers, including a good general reputation for truth and veracity. His brother-in-law testified that he had been with him for several hours prior to the accident, and that when he last saw him between 8:00 and 9:00 p.m., he did not appear to be intoxicated.
 I.
Appellant first contends that the trial court committed reversible error in admitting into evidence over his objection the testimony of witness Dr. Jorge Pirl, a forensic toxicologist, who gave his opinion of the general effect that a blood alcohol content of .11% would have on a person. Appellant argues that it was improper for the witness to give his opinion as an expert without first testifying to the facts on which the opinion was based and that the opinion invaded the province of the jury.
The admissibility of expert opinions is authorized in this state by § 12-21-160, which reads: "The opinions of an expert on any questions of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses." The criterion for admission of expert *Page 1003 
testimony is that the witness, by study, practice, experience, or observation as to a particular subject should have acquired knowledge beyond that of an ordinary witness; an expert witness is one who can enlighten the jury more than the average man on the street, one whose knowledge extends beyond or supersedes that of an ordinary witness, or one who is shown, either by training or experience, to be better informed than a hypothetical average juror. Charles v. State,350 So.2d 730 (Ala.Cr.App. 1977); C. Gamble, McElroy's AlabamaEvidence § 127.01(5) (3d ed. 1977). Whether a witness is sufficiently qualified to testify as an expert is a question for the trial court in its discretion to resolve, and its ruling will not be disturbed on appeal unless there has been abuse of that discretion. Johnson v. State,378 So.2d 1164 (Ala.Cr.App.), writ quashed, 378 So.2d 1173 (Ala. 1979);Radney v. State, 342 So.2d 942 (Ala.Cr.App. 1976), cert. denied, 342 So.2d 947 (Ala. 1977); C. Gamble, supra, at § 127.01(5).
"It has been held traditionally in this country that an expert witness cannot give his opinion upon an ultimate issue in the case." C. Gamble, supra, at § 127.01(5). The rationale underpinning the "ultimate issue rule" is that expert opinion should not be permitted to invade the province of the jury. Id. There are Alabama cases upholding this traditional rule. Colvin v. State, 247 Ala. 55,22 So.2d 548 (1945); see C. Gamble, supra, at § 127.01(5). However, the modern trend is in the direction of permitting experts to give their opinions upon ultimate issues, of which the final determination rests with the jury:
 "Despite the restrictive rule in the foregoing paragraph, however, there appears to be a modern trend in the direction of permitting experts to give their opinions upon ultimate issues whose final determination rests with the jury. The basic theory underlying the decisions forming this trend is that the expert should be allowed to give his opinion upon an ultimate issue if that will aid the jury in its decision. The Alabama courts have adopted language to the effect that because a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper."
C. Gamble, supra, at § 127.01(5). (Footnotes omitted.)
"The problem regarding the ultimate issue limitation is simply that in complex cases involving issues beyond the abilities of laymen, a jury may need an expert's opinion on the ultimate issue in order to reach a fair verdict. Opinion on the issues of identity, value, insanity, and intoxication, for instance, all border on what would be considered ultimate fact issues, yet they are generally held admissible." A. Moenssens and F. Inbau, Scientific Evidence in Criminal Cases, § 1.18(2) (2d ed. 1978). See 7 Wigmore, Evidence
§§ 19201921 (3d ed. 1940); 2 Wharton's CriminalEvidence § 957 (C. Torcia 11th ed. 1935). See also, Fed.R.Evid. 704.
We have previously held that a toxicologist may be permitted to testify in a vehicular homicide case as an expert concerning the effect of alcohol on a person. Pollard v. State,549 So.2d 593 (Ala.Cr.App. 1989); Smoot v. State,520 So.2d 182 (Ala.Cr.App. 1987).
"An expert's opinion testimony is not controlling; the jury must determine the weight and sufficiency of it. Just because an expert testifies to a fact does not mean that it must be taken as true." R. Williams, Alabama Evidence § 187 (1967) (footnotes omitted). See also 2 Wharton's, supra, at § 565.
The testimony of Dr. Pirl, giving rise to this contention, is as follows:
"Q. Doctor Pirl, can you tell us what would be the effect of a .11 on the bodily functions of an individual?
 "MR. WILKINSON [defense counsel]: I object, may it please the Court, for this reason. I think that question, or the answer to that question, calls for — would invade the province of the jury, on this particular occasion.
"THE COURT: You are talking about in general? *Page 1004 
 "MS. MONTGOMERY [prosecutor]: Yes, sir. If he has an opinion as to what bodily functions would be affected if a person had a .11.
 "MR. WILKINSON: If it's in general, I think it's unfairly prejudicial, and irrelevant. If it's specified, then I think it invades the province of the jury. And I think the question is very prejudicial.
 "THE COURT: Well, of course, the State, at least, has to prove recklessness.
"MR. WILKINSON: Yes, sir.
 "THE COURT: What was your question, again, Tammy?
 "MS. MONTGOMERY: If Doctor Pirl could tell us what would be the effect of a .11 on the bodily functions of an individual.
 "THE COURT: Of an individual? Is that question susceptible to an answer, or do you need to know body weights and —
"THE WITNESS: No, sir.
"THE COURT: — all that?
 "THE WITNESS: It's an acceptable question for me.
 "THE COURT: It is an acceptable question for you?
"THE WITNESS: Yes, sir.
 "THE COURT: Are we talking about motor coordination and that type of thing, or what?
"THE WITNESS: Yes, sir.
 "MR. WILKINSON: I object to it, again, on both grounds, as not being relevant, and prejudicial, if it's in general. And if it's specific, it invades the province of the jury.
"THE COURT: Overruled. Go ahead.
"MR. WILKINSON: Exception.
 "THE COURT: Go ahead, sir. If you don't need those variables that she's not going to give you, go ahead.
 "A. The concentration of .11 percent is a concentration that falls into a range that toxicologists define as a degree of impairment. As a range of stimulation, in reality, it's not a stimulation that occurs, but it is a depression of the central nervous system, at that concentration, where the inhibitions are depressed, and often people are observed as appearing to be stimulated. This is why this range has been classified as such. That range covers a concentration of .09 to .25 percent, blood alcohol concentration.
 "At the early stages of that range, there is a depression of reflexes. There is a slowed performance or final performances which requires a fine coordination of hand and eye movement. There is mild motor impairment, mild motor impairment to the degree of — again, in coordination and responses to stimulation. At the high end of this range there is a very pronounced depression of the motor functions, to the point of slurred speech, staggered gait, balance impairment, and a very severe and apparent degree of intoxication.
 "At a concentration of .10, it has been determined, in many experiments —
 "MR. WILKINSON: Excuse me, I object to this as not being responsive to the question. And it's prejudicial.
"THE COURT: Overruled. Go ahead.
 "A. At that concentration, it has been shown that one hundred percent of the population is impaired in the operation of a motor vehicle, because of massive impairment of judgment. .11 is very close to that concentration. And beyond that, I really cannot be any more specific, because of individual variations."
The instant record reflects the education, training, and experience of Dr. Pirl. He holds a bachelor's and a master's degree in chemistry and a doctorate in medicinal chemistry and pharmacology. He is a certified forensic toxicologist with many years of experience. He was obviously qualified to testify as an expert about the effects of alcohol on human bodily functions. The trial court did not abuse its discretion in permitting him to do so. The questions put to Dr. Pirl by the prosecutor were proper hypothetical questions under the circumstances. Hypothetical questions are necessary when the expert lacks personal knowledge of the facts of the case.Parker v. Randolph County, 475 So.2d 1193
(Ala.Civ.App. 1985); 2 Wharton's, supra, at § 561. *Page 1005 
The ultimate issue to be decided by the jury was whether Bailey's conduct in operating his motor vehicle, under the circumstances, was reckless, and, if so, how reckless. The factual issue of whether, at the time of the collision, appellant was operating his vehicle while under the influence of alcohol, as alleged in the indictment, was for the jury to decide in determining the ultimate issue of recklessness. To that extent, Dr. Pirl's opinion of the effects of alcohol on bodily functions embraced or bordered on the ultimate issue. Nevertheless, we believe that the expert testimony was such that it would have aided the jury in considering the effect a blood alcohol content of .11%, which we think beyond the knowledge of the layperson, and, thereby, in reaching a fair decision in the case. Therefore, it was admissible.
The trial court properly instructed the jury in reference to how it should consider expert testimony. It cautioned it that "the testimony of an expert, just like everyone else, is testimony for you to assess by whatever criteria you deem to be reasonable in assessing what value you attach to their testimony." The trial court also instructed the jury on the statutory presumption arising from the blood alcohol content of a person, § 32-5A-194. It instructed the jury as follows:
 "[T]he amount of alcohol in the subject's blood, at the time of the test, as shown by analysis of the person's blood . . . shall give rise to the following presumptions: . . . [I]f there was at the time of the test .10 percent or more by weight of alcohol, in the subject's blood, it shall be presumed that the person was under the influence of alcohol. It's important to note that in the next statement, that this foregoing provision of this subsection says that: It shall not be construed as limiting the introduction of any other competent evidence, bearing upon the question of whether the person was under the influence of alcohol."
This instruction was a paraphrase of § 32-5A-194(b)(3) and (4), and no objection on the ground of the correctness of this charge was entered.
In conclusion, we hold that the trial court did not abuse its discretion in admitting the testimony of the toxicologist as to the effect of alcohol on bodily functions. Even though it may have bordered on an ultimate fact in issue, its scientific value and importance to the understanding of the jury were such that it should have been admitted. Taking the expert testimony as a whole, along with the court's charge, we think that the issues were clearly presented and that the jury was not misled.
 II.
Last, appellant contends that reversible error occurred when the trial court, just prior to the testimony of the expert, Dr. Pirl, instructed the jury as to the statutory presumption concerning blood alcohol content provided in § 32-5A-194. The trial court obviously did this in order to inform the jury of what was taking place and the reason for the expert testimony. The instruction consisted of merely paraphrasing the statute. Appellant argues that the giving of the instruction at the particular time it was given gave the appearance of "buttressing" Dr. Pirl's testimony and placing unwarranted importance on the blood alcohol content.
There is no statute governing the time when a trial judge must instruct the jury, but as a matter of practice and tradition, the oral charge is delivered after the closing arguments of attorneys, immediately before the jury begins its deliberations. Gaston v. State, 359 So.2d 1170
(Ala.Cr.App. 1978); § 12-16-11. No authority has been cited which holds that this is the only time the trial court may instruct the jury. See Gaston v. State,359 So.2d at 1172. After reviewing the entire proceedings, we do not agree with appellant that the trial court's instruction on the statutory presumption of intoxication immediately prior to the expert's testimony was prejudicial.
Based on the foregoing, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur. *Page 1006