The appellants, Martha Jo Brannon Sotto and Kathy Campbell,[1] were convicted of criminal mischief in the first degree (§ 13A-7-21, Code of Alabama 1975), and of discharging a firearm into an occupied dwelling and discharging a firearm into an unoccupied vehicle (§ 13A-11-61(a), Code of Alabama 1975). The victim of the shooting was the mother of Kathy Campbell's daughter's ex-husband. They were sentenced to 10 years. That sentence was split and they were ordered to serve three years and were placed on five years probation on the criminal mischief and shooting into an unoccupied vehicle convictions. They were sentenced to concurrent 20 year terms on the shooting into an occupied dwelling convictions. The appellants raise five issues on appeal.
 I
The appellants first contend that the state's evidence was insufficient to sustain a conviction of shooting into an occupied dwelling, and that the trial court erred in denying their motion for a judgment of acquittal. Specifically, they contend that the state failed to prove that they shot "into an occupied dwelling."
Section 13A-11-61(a) states:
 "No person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state."
(Emphasis added.)
Section 13A-7-1(3) defines "dwelling" as "[a] building which is used or normally used by a person for sleeping, living or lodging."
Section 13A-7-21 states:
 "(a) A person commits the crime of criminal mischief in the first degree if, with intent to damage property, and having no right to do so or any reasonable *Page 311 
ground to believe that he has such a right, he inflicts damages to property:
"(1) In an amount exceeding $1,000.00; or
"(2) By means of an explosion."
The state presented both direct and circumstantial evidence. There was eyewitness testimony from Tommy Stinnet, a private investigator hired by the Madison County Sheriff's Department to do surveillance of the victim's house. Stinnet testified that he saw a van pull up in front of the victim's house in Huntsville on July 23, 1995, and fire two shots. The record reflects that one of the shots struck the house causing approximately $500 in damage. While the other struck the victim's car causing roughly $1,100 in damage. Stinnet also observed the van's license plate number and the occupants and chased the van to a nearby Waffle House restaurant where the two occupants, who he later identified as the appellants, exited the van.
There was also videotape evidence taken from a surveillance camera outside the victim's house that showed the incident and corroborated Stinnet's testimony.
James L. Williams, an investigator for the Huntsville Police Department testified that the victim's car and house were damaged as a result of the incident. He also testified that officers searched the route taken by the van to the restaurant and that a .32 caliber pistol was retrieved from the front yard of a house along the route. Investigator Williams testified that the front porch ceiling of the victim's house had a noticeable scratch or gouging in the paint.
The appellants argue that William's testimony shows that they did not shoot "into" an occupied dwelling. They argue that they shot only the front porch, which is not the "dwelling".
 "The standard of review we use to decide sufficiency issues is whether legal evidence was submitted from which the jury could by fair inference find the defendant guilty. In applying this yardstick, we must accept as true the evidence introduced by the State, accord the State all legitimate inferences from that evidence, and consider the evidence in the light most favorable to the state. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991)."
Haynes v. State, 644 So.2d 1281, 1284 (Ala.Cr.App. 1994).
This Court in Hawkins v. State, 621 So.2d 400
(Ala.Cr.App. 1993), addressed a similar issue under § 13A-11-61, Code of Alabama 1975, with respect to an occupied vehicle.
 "The appellant initially argues that he should not have been convicted of discharging a firearm into an occupied vehicle because, he says, the shots did not enter the interior of the automobile.
"Section 13A-11-61(a) states:
 " 'No person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state.'
"An 'automobile' is defined as follows:
 " 'A passenger vehicle designed for operation on ordinary roads and typically having four wheels and a gasoline or diesel internal-combustion engine.' "
 "The Random House Dictionary of the English Language (2d ed. 1987).
 "The definition of an automobile includes the frame of the vehicle and the tires. Had the legislature intended to limit the application of the statute to the passenger compartment of an automobile, it would have specifically done so in the statute. Section 13A-11-61 seeks to punish all individuals who shoot into an occupied or unoccupied vehicle, whether the projectile enters the passenger compartment or not and no matter how accurate their aim in firing weapons may be."
621 So.2d at 401 (emphasis added).
Section 13A-11-61(a) states, in part: "No person shall shoot or discharge a firearm . . . into any occupied or unoccupied dwelling." It follows that if it does not matter whether the projectile enters the passenger compartment of an automobile, the same is true as to a dwelling and the living area therein. If the legislature had intended that to sustain a conviction under § 13A-11-61(a) the projectile *Page 312 
enter the actual interior of the dwelling it would have specifically stated in the statute. Therefore, by analogy, the state's evidence need not show that the bullet penetrated the actual interior of the dwelling, but only that the shots were fired at and hit the dwelling.
There was sufficient evidence for the trial court to submit the case to the jury and for the jury to find beyond a reasonable doubt that the appellants were guilty of firing into an occupied dwelling. The trial court did not err in denying the appellants' motion for a judgment of acquittal on all three charges.
 II
The appellants contend that the trial court erred in failing to require the state to elect between the offenses of criminal mischief in the first degree and shooting into an unoccupied vehicle. Specifically, the appellants contend that because the two offenses required proof of the same facts, their constitutional right to be free from double jeopardy was violated when they were prosecuted for both offenses.
Initially, we observe that the trial court must first have the opportunity to rule on an issue before it can be preserved for appellate review. See Woodberry v. State, 625 So.2d 1159
(Ala.Cr.App. 1993); Ross v. State, 581 So.2d 495 (Ala. 1991). Even constitutional issues must be properly presented to the trial court in order to be preserved for appellate review. SeeAdams v. City of Pelham, 651 So.2d 55 (Ala.Cr.App. 1994); Hansenv. State, 598 So.2d 1 (Ala.Cr.App. 1991). This issue was not preserved for appellate review. Even if this issue had been preserved for appellate review, however, we would determine it adversely to the appellant.
The appellants rely on the "same-element" test found inBlockburger v. United States, 284 U.S. 299, 52 S.Ct. 180,76 L.Ed. 306 (1932), and reaffirmed by the United States Supreme Court in United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849,125 L.Ed.2d 556, (1993), as the sole criterion for judging double jeopardy claims.
 "The 'same evidence [or element]' test of Blockburger is stated as follows: 'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.' Blockburger, 284 U.S. at 304, 52 S.Ct. at 182." State v. Patton, 669 So.2d 1002, 1004 (Ala.Cr.App. 1993).
Ivey v. State, 698 So.2d 179, 183 (Ala.Cr.App. 1995).
The charge of criminal mischief in the first degree is defined as follows:
 "(a) A person commits the crime of criminal mischief in the first degree if, with intent to damage property, and having no right to do so or any reasonable ground to believe that he has such a right, he inflicts damages to property:
"(1) In an amount exceeding $1,000.00; or
"(2) By means of an explosion."
Section 13A-7-21, Code of Alabama 1975.
The statute defining the offense of shooting into an unoccupied vehicle states, for the most part:
 "No person shall shoot or discharge a firearm . . . into any occupied or unoccupied . . . automobile."
§ 13A-11-61(a), Code of Alabama 1975.
The offense of criminal mischief in the first degree requires proof of an additional element, i.e., that the damages inflicted exceeded $1,000. No such proof is required for the offense of shooting into an unoccupied dwelling or vehicle. This satisfies the Blockburger test.
 III
The appellants contend that the trial court erred by not granting the appellants' motion for a mistrial because, they say, the state did not present a prima facie case of gender-based discrimination to warrant a Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), hearing or to justify the dismissal of the first jury panel.
In Batson, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution prohibits *Page 313 
removing blacks from a black defendant's jury for the sole reason of their race. The United States Supreme Court extended its decision in Batson to white defendants in Powers v. Ohio,499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); to civil cases in Edmonson v. Leesville Concrete Co., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); and to defense counsel in criminal cases in Georgia v. McCollum, 505 U.S. 42,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Recently the Alabama Supreme Court held that Batson applies to the striking of prospective white jurors. White Consolidated Industries, Inc. v. American LibertyInsurance Co., 617 So.2d 657 (Ala. 1993). In 1994, the United States Supreme Court extended Batson to apply to gender-based strikes in J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419,128 L.Ed.2d 89 (1994).
In the present case, the record reflects that counsel for the appellants used the first seven of his nine peremptory strikes to strike white females. The trial court went over the strikes and noted for the record that the appellants' counsel's use of his peremptory strikes constituted a prima facie case of gender-based discrimination. The court then asked the appellants' counsel to give his reasons for striking the seven white females. After hearing the reasons, the court excused the jury panel. As stated above, the appellants now challenge the trial court's finding of a prima facie case. " 'In determining whether there is a prima facie case, the court is to consider "all relevant circumstances" which could lead to an inference of discrimination.' Ex parte Branch, 526 So.2d 609, 622
(Ala. 1987)." Mines v. State, 671 So.2d 121, 122
(Ala.Cr.App. 1995).
In Mines, this Court cited factors that can raise an inference of discrimination. One of them is that the voir dire conducted was cursory. The record reflects that there was a brief voir dire, which amounted to "nothing more than desultory voir dire." 671 So.2d at 122. The record also reveals that the questions asked were very general as to the beliefs of members of the venire concerning the American judicial system and whether they wanted to serve on the jury in this case. These questions could also lead to an inference of discrimination in that there was "a lack of questions, or a lack of meaningful questions." 671 So.2d at 122. The fact that the appellants' counsel used seven of his nine strikes to strike white females is one factor to be considered, along with the factors mentioned above, in finding a prima facie case of discrimination.
"It is well settled that the ruling of the trial court on aBatson hearing is entitled to substantial deference and will not be disturbed on review unless it is 'clearly erroneous.'Scales v. State, 539 So.2d 1074 (Ala. 1988)." Ex parte Bankhead,625 So.2d 1146, 1148 (Ala. 1993).
The record reflects that counsel for the appellants stated that he struck the seven white females based on his intuition. He failed to state any articulable reasons whatsoever. The trial court dismissed the first jury panel because the defense could not provide gender-neutral reasons, nonviolative ofBatson, for the strikes.
The trial court correctly found a Batson violation and dismissed the first jury panel. No error occurred here.
 IV
The appellant Campbell contends that the trial court erred in denying her request to call Dr. Forrest Herrington, a pediatrician, to testify that the appellant Campbell's granddaughter had been sexually abused in order to show bias on the part of the victim. She also contends that the trial court erred in refusing to receive into evidence the record of the divorce of Campbell's daughter and the victim's son.
Campbell wanted to introduce Herrington's testimony to justify claims of sexual abuse on her granddaughter. Sexual abuse, however, was not an issue in this case and the trial court properly excluded the testimony.
Campbell wanted to introduce the record of the divorce between the victim's son and her daughter to show the victim's bias against her. The record reflects that testimony of numerous witnesses showed possible bias against Campbell on the part of the victim. For example, the allegations of sexual *Page 314 
abuse were received into evidence through testimony of the victim's daughter-in-law.
The testimony of Dr. Herrington and the record of the divorce would have been nothing but cumulative and the trial court did not err in excluding this testimony. See Morrison v. Morrison,628 So.2d 839 (Ala.Civ.App. 1993); Alabama Power Co. v.Wallace, 548 So.2d 1372 (Ala. 1989).
 V
Last, the appellants contend that the trial court erred by refusing to give a curative instruction to the jury regarding a comment made by the state in closing argument.
The record does not reveal that the appellants' counsel asked for and was denied a curative instruction nor does it reveal a motion for mistrial. In essence, there is no adverse ruling from which the appellants can appeal. See Allen v. State,659 So.2d 135 (Ala.Cr.App. 1994); McArthur v. State, 591 So.2d 135
(Ala.Cr.App. 1991), cert. denied, 601 So.2d 218 (1992). Accordingly, this issue is not preserved for appellate review.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.
[1] The appellants were tried together and were represented by the same counsel at trial.