929 So.2d 515 (2005)
Brenda L. KENNEDY
v.
STATE of Alabama.
CR-03-1583.
Court of Criminal Appeals of Alabama.
April 29, 2005.
*516 Talitha Powers Bailey, Pinson, for appellant.
Troy King, atty. gen., and Yvonne A.H. Saxon, asst. atty. gen., for appellee.
COBB, Judge.
On March 4, 2004, Brenda L. Kennedy was convicted of child abuse, a violation of § 26-15-3, Ala.Code 1975. On June 3, 2004, the trial court sentenced Kennedy, as a habitual felony offender,[1] to 20 years in prison, but split the sentence and ordered Kennedy to serve 3 years in prison, to be followed by 5 years on supervised probation. On June 5, 2004, Kennedy filed a "Motion to Reconsider Sentence or in the Alternative Defendant's Objection to Sentence," which the trial court denied on June 22, 2004. On June 25, 2004, Kennedy filed a motion for a new trial, which the trial court denied on July 16, 2004. This appeal followed.
The facts adduced at trial indicate the following: On June 7, 2003, eight-year-old C.J. telephoned emergency 911 from the house he shared with Kennedy, his mother.[2] C.J. called 911 because he was home alone and believed someone was trying to break into the house. When the police officer arrived, he found C.J. alone, naked and hungry, with his wrists and ankles bound with duct tape. C.J. told the officer that, early that morning, Kennedy had left C.J. alone and bound in the bathtub. According to C.J., this was not the first time *517 this had occurred. On this particular day, C.J. had managed to work his hands loose, but his ankles were tightly bound, forcing him to hop to the telephone and to the door. Upon entering the house, the police officer covered C.J. with newspaper and, after ensuring there was no intruder in the house, cut the duct tape from C.J.'s ankles. C.J. was taken to the police station, where he was fed. At the time of Kennedy's sentencing, C.J. was still in the custody of the Department of Human Resources because no family member had appeared at his permanency hearing. See § 12-15-62(c), Ala.Code 1975.
Kennedy raises two issues on appeal. We address each in turn.

I.
Kennedy argues that the trial court erred in several ways by allowing the State's expert witness to testify. The witness, Emily Israel, was employed as a counselor and forensic interviewer at the Prescott House, a child advocacy center. At trial, the State questioned Israel, then moved to have her qualified as an expert witness. Kennedy objected on the following grounds:
"[Defense counsel]: I object. . . . I don't know if she should be qualified as an expert. I mean, the tape[3] speaks for itself. The jury can look at that and make a determination based on what they've seen. So I object to her giving any inferences as to his statements on the tape.
". . . .
"THE COURT: I'm going to overrule your objection. She's qualified as an expert."
(R. 132-22.)
"[Prosecutor]: Ms. Israel, after talking to [C.J.], the young man on the tape, did you form an opinion as to whether or not he had been abused?
"[Defense counsel]: Objection, Your Honor. That's a question for the jury.
"THE COURT: I'm going to sustain that.
"[Argument by the prosecutor].
"THE COURT: I'm going to sustain at this time."
(R. 133-34.) Another witness, a social worker, testified that Kennedy at first had maintained that C.J. had tied himself up, then changed her story to blame a homeless woman, whom, Kennedy maintained, she had hired to take care of C.J. After that testimony, the trial court reconsidered its previous ruling that Israel could not offer her opinion as to whether C.J. had been abused, stating:
"Of course, now there are two ultimate issues: whether or not he was abused and whether or not this defendant, in fact, did that.
"I'm still not completely definite that it's proper. I would like to review the cases that we've sent [someone] to get. . . ."
"I believe that the courts are pretty clear as to the facts thatI don't know that `pretty clear' is right, but the courts definitely seem to be easing up on the restriction of an expert witness testifying as to something that may be seen by some as the ultimate issue.
". . . I am going to allow [the prosecutor] to pose that question to Ms. Israel.
"[Defense counsel]: We would like to object on the record, since that goes to the heart of the issue and what the jury is to decide in this case.

*518 "THE COURT: I believe the cases bear me out that this is not the heart of the issue. This is not the ultimate issue. . . ."
(R. 149-53.) Upon being recalled to the stand, Israel testified that she had interviewed more than 400 children. She also testified that, in her opinion, C.J. had been abused.

A. Assisting the Trier of Fact
First, Kennedy argues that the admission of the expert's testimony was erroneous because the State did not first establish that her testimony was necessary under Rule 702, Ala. R. Evid. Rule 702 provides:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
The State argues that Kennedy has not preserved this argument for appellate review. We agree with the State. Kennedy objected: "[T]he tape speaks for itself. The jury can look at that and make a determination based on what they've seen." However, the trial court did not rule on this issue. The trial court ruled that the witness was qualified as an expert; the trial court did not, however, rule on Kennedy's assertion that the witness's testimony was not necessary under Rule 702. "[T]he trial court must first have the opportunity to rule on an issue before it can be preserved for appellate review. See Woodberry v. State, 625 So.2d 1159 (Ala.Cr.App.1993); Ross v. State, 581 So.2d 495 (Ala.1991)." Sotto v. State, 701 So.2d 309, 312 (Ala.Crim.App.1997). Because the trial court did not rule on Kennedy's argument that the expert's testimony should have been disallowed as not assisting the trier of fact in understanding the evidence or in determining a fact in issue, we do not invade the province of the trial court by addressing this issue for the first time on appeal. See Pace v. State, 714 So.2d 332, 334 (Ala.1997) (holding that absent a timely objection and an adverse ruling nothing is preserved for appellate review) (citing Biddie v. State, 516 So.2d 846 (Ala.1987)).

B. Qualifying the Witness
Kennedy also argues that the State did not lay a proper foundation to establish that the witness was an expert. As noted above, Kennedy objected on this ground at trial, and her objection was overruled.
A witness may be qualified as an expert by evidence of that person's "knowledge, skill, experience, training, or education" in the area of expertise. Rule 702, Ala. R. Evid. The determination of whether a person is qualified to testify as an expert is well within the discretion of the trial court; we will not disturb the trial court's ruling on that issue unless there has been an abuse of that discretion. See Bailey v. State, 574 So.2d 1001, 1003 (Ala. Crim.App.1990). Moreover, a challenge to the qualifications of an expert go to the weight, not the admissibility, of the expert's testimony. See Smoot v. State, 520 So.2d 182, 189 (Ala.Crim.App.1987).
In this case, Israel testified that, at the time she interviewed C.J., she was employed as a counselor at the Prescott House. She testified that she had an undergraduate degree in education with a double major in psychology and English. She testified that she had a Master of Science degree in special education and a Master of Science degree in counseling. She testified that she was registered as a "play therapist" and had been "trained at the national academy in investigative interviewing," *519 where, for a week, she was schooled in how to conduct interviews with small children without suggesting an answer or using leading questions while interviewing. (R. 129.) Kennedy argues that Israel nonetheless was not qualified to testify as an expert because she "never taught, was not licensed by the state . . ., [was] not published, and had only one year of experience when she interviewed the child in this case." (Kennedy's brief, p. 8.) Kennedy does not in any way explain how these additional qualifications would have aided in the expert's testimony or how her testimony was flawed because of these alleged deficiencies. We cannot say that the trial court abused its discretion by allowing Israel to testify as an expert. Therefore, this issue is without merit.

C. The Ultimate Issue
Kennedy argues that the trial court erred by allowing Israel to testify as to the ultimate issuewhether C.J. had been abused.
"The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). Rule 704, Ala. R. Evid., provides that "[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact."
Whether C.J. had been abused was not at issue. Kennedy did not dispute the fact that C.J. was bound, naked, and alone without food when the officer found him. The fact at issue was whether Kennedy was responsible for C.J.'s state. As stated above, Kennedy first told a social worker that C.J. had tied himself up and later told the social worker that a homeless woman had done it. Therefore, Israel's opinion testimony that C.J. had been abused did not address a fact at issue in this case.
Moreover, even if an issue had been made of whether C.J. had been abused, we would nonetheless hold this argument to be without merit.
"`". . . [I]n the case of expert testimony, enforcement of [Rule 704] has been lax. C. Gamble, Gamble's Alabama Rules of Evidence § 704 (1995). We have noted previously in Travis v. State, 776 So.2d 819 at 849 (Ala.Cr.App.1997), that expert testimony as to the ultimate issue should be allowed when it would aid or assist the trier of fact, and the fact that `"`a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper'"' (citations omitted); see also Rule 702, Ala. R. Evid. (stating that expert testimony should be allowed when it will aid or assist the trier of fact)."
"`Henderson v. State, 715 So.2d 863, 864-65 (Ala.Crim.App.1997).'
"[Fitch v. State,] 851 So.2d [103] at 117 [(Ala.Cr.App.2001)]. Accord, Henderson v. State, 715 So.2d 863, 865 (Ala.Crim. App.1997); Perkins v. State, 808 So.2d 1041, 1106 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001)."
Harrington v. State, 858 So.2d 278, 296 (Ala.Crim.App.2002). Therefore, even if the expert's testimony had been directed to the ultimate issueand we conclude that it was notthe testimony would have been admissible because it would have aided the jury in its resolution of the case had there been a question of whether C.J. had been abused.

*520 II.
Finally, Kennedy argues that the trial court erred by sentencing her as a habitual offender. We agree.
Section 26-15-3, Ala.Code 1975, provides:
"A responsible person, as defined in Section 26-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
The issue is whether a conviction based on a Code section not included in Title 13A, the Alabama Criminal Code, can be enhanced under the provisions of the Habitual Felony Offender Act ("the HFOA") when that Code section does not classify the offense as a particular felony and provides its own punishment range. See § 13A-5-9, Ala.Code 1975. We have addressed similar issues before with varying results depending upon the facts of the particular case.
In Martin v. State, 625 So.2d 455 (Ala. Crim.App.1992), the defendant pleaded guilty to leaving the scene of an accident with injury and was sentenced, as a habitual offender, to 15 years in prison. Martin's offense was proscribed by § 32-10-1, Ala.Code 1975, and the penalty therefor was provided in § 32-10-6, Ala.Code 1975.[4] The Court held that Martin had been properly sentenced as a habitual offender because an express and separate sentencing provision had not been established for a violation of § 32-10-1 and because a violation of § 32-10-1 when the violation resulted in death or personal injury was specifically classified as a Class C felony in the statute. The Court reasoned:
"Alabama's Habitual Felony Offender Act (`HFOA') is codified in Ala.Code 1975, §§ 13A-5-9 and -10. Section 13A-5-1(a) provides that `[e]very person convicted of any offense defined in this title, or defined outside this title, shall be sentenced by the court in accordance with this article, unless otherwise specifically provided by law.' . . . In Ex parte Chambers, 522 So.2d 313 (Ala.1987), the Alabama Supreme Court held that the HFOA was inapplicable to felony drug offenses as then defined in Title 20 and that defendants convicted of offenses under the Uniform Controlled Substances Act must be sentenced according to the recidivist provisions of that Act.
"The penalty for a violation of § 32-10-1 is proscribed by § 32-10-6, which provides:
"`Every person convicted of violating sections 32-10-1 through 32-10-5 or any of the provisions thereof, when such violation involved only damage to property, shall be punished the same as prescribed by law for a Class A misdemeanor; provided, however, that every person convicted of violating such sections, or any provisions thereof, when such violation involved death or personal injury, shall be punished the same as prescribed by law for a Class C felony.' (Emphasis added).
". . . The Legislature has not provided express and separate sentencing provisions for a violation of § 32-10-1, but *521 has provided that such violations that involve death or personal injury `shall be punished the same as prescribed by law for a Class C felony.' § 32-10-6. . . .
"Therefore, it is the holding of this Court that the sentencing provisions of the Alabama Criminal Code that specifically include the provisions of the Habitual Felony Offender Act do apply to sentencing for a violation of § 32-10-1 when such a violation involves death or personal injury. The appellant was properly sentenced as a habitual felony offender and the judgment of the circuit court is affirmed."
625 So.2d at 455-56. Thus § 32-10-6 classified the offense Martin was adjudged guilty of as a Class C felony and, although the offense was outside Title 13A, the HFOA applied. See also Dobbins v. State, 716 So.2d 231 (Ala.Crim.App.1997) (defendant was convicted under the provisions of the Alabama Uniform Controlled Substances Act (the Act), § 20-2-1 et seq., Ala.Code 1975, and sentenced under the HFOA; remanded for resentencing on the authority of Ex parte Chambers, 522 So.2d 313 (Ala.1987)). But see Nunnery v. State, 410 So.2d 444 (Ala.Crim.App.1981) (holding that a conviction for possession of a pistol after having been convicted of committing or attempting to commit a crime of violence, a violation of § 13A-11-72, Ala. Code 1975, could be enhanced under the HFOA even though possession of a pistol under such circumstances was not a classified felony and § 13A-11-84 prescribed a punishment).
Child abuse, a violation of § 26-15-3, Ala.Code 1975, is not an offense defined in Title 13A. Rather, the offense and the punishment range for a conviction for child abuse are detailed in an entirely separate Title of the Code. As the Alabama Supreme Court noted in Ex parte Chambers:
"When the legislature revised the Criminal Code in 1977, particularly Title 13A, Chapter 5, having to do with punishments and sentences, it was well aware that the penalties set out in that chapter would not necessarily be applicable to all criminal offenses defined outside Title 13A. This is made clear in § 13A-5-1, [Ala.Code 1975,] which sets out the applicability of the provisions of Chapter 5:
"`(a) Every person convicted of any offense defined in this title, or defined outside this title shall be sentenced by the court in accordance with this article, unless otherwise specifically provided by law.

"`(b) Penal laws enacted after January 1, 1980 shall be classified for punishment purposes in accordance with this article.'
"Particularly illuminating is the commentary to the above section, as it pertains to subsection (a):
"`Subsection (a) makes it clear that sentences for all offenses, both within and outside the Criminal Code, must be imposed in accordance with the Criminal Code, "unless otherwise specifically provided by law." Since all offenses defined in this Criminal Code have been specifically classified, the provision is aimed primarily at offenses outside the Criminal Code, i.e., sections of the Alabama Code of 1975 that are not repealed upon adoption of this Criminal Code. However, there will always be some exceptions where different, or special, sections may apply. For example, drug offenses are not covered in this Criminal code, but are governed by the Alabama Uniform Controlled Substances Act, § 20-2-1, et seq., which specifically provides for special penalties. Also, "highway violations" is a category not *522 integrated into this Code but is governed by Title 32, Motor Vehicles and Traffic.' (Emphasis added.)
"Thus, it is clear that the legislature knew that because the Controlled Substances Act provided its own penalties, none of the provisions of Title 13A, Chapter 5, including the Habitual Felony Offender provisions, would apply to drug offenses. Under a clear reading of the pertinent sections and the commentary thereto, the penalties set out in Title 13A, Chapter 5, are applicable only to `outside' offenses where no particular punishment is specified. See the Commentary to § 13A-5-4:
"`To the extent that there are some crimes now found outside former Title 13 which have not been subsumed by the Criminal Code and which are not repealed, it is desirable that they be incorporated into the Criminal Code, at least those which specify no particular punishment.' (Emphasis added.)
"See also, Dickerson v. State, 414 So.2d 998, 1005 (Ala.Crim.App.1982), where the Court of Criminal Appeals, construing §§ 13A-5-1, -3, and -4, concluded:
"Jose I. Astigarraga, Edward M. Mullins, Edward H. Davis, Jr., and Elena M. Marlow, The International Law Section of The Florida Bar, Miami, Florida, `A close reading of the commentaries following sections 13A-5-1, -3 and -4 reveals that the legislature, in enacting new laws under Title 13A, must conform their punishments and sentences to the provisions of Chapter 5 thereof. However, they make clear that for penal statutes enacted outside the scope of Title 13A, such is merely "desirable." They specifically note that drug offenses fall outside the scope of Title 13A and provide for their own special penalties.

"`Thus, it is apparent, § 13A-5-1(b) to the contrary, that the legislature intended to classify all subsequent penal laws falling within the scope of Title 13A, but retained its authority not to do so with respect to those penal provisions enacted subsequent to its effective date falling outside its scope.' (Emphasis added.)"
522 So.2d at 315-16. This case, then, is unlike cases such as Matchum v. State, 880 So.2d 1202 (Ala.Crim.App.2003), and Hampton v. State, 815 So.2d 565 (Ala. Crim.App.1999), rev'd on other grounds, 815 So.2d 569 (Ala.2000), in that Kennedy was not convicted for a crime encompassed within Title 13A.
Additionally,
"[t]he particular classification of each felony defined in this title, except murder under Section 13A-6-2, is expressly designated in the chapter or article defining it. Any offense defined outside this title which is declared by law to be a felony without specification of its classification or punishment is punishable as a Class C felony."
§ 13A-5-4(a), Ala.Code 1975. A violation of § 26-15-3 has not been declared by law to be a felony and obviously has not been classified as a specific type of felony; its punishment encompasses both a Class A misdemeanor (up to 1 year) and a Class C felony (1 year and 1 day to 10 years). See §§ 13A-5-6 and -7, Ala.Code 1975. We note that aggravated child abuse, a violation of § 26-15-3.1, Ala.Code 1975, is specifically classified as a Class B felony, indicating that, had the legislature wished to do so, it could have classified child abuse as a felony also.
"The Habitual Felony Offender Act, with its punishment enhancement provisions, is a penal statute, and must be strictly construed, especially in regard to its applicability to felony offenses outside *523 the Criminal Code." Ex parte Chambers, 522 So.2d at 316. Because § 26-15-3 is not an offense enumerated in Title 13A, because § 26-15-3 has neither been declared a felony nor classified as a particular felony, and because § 26-15-3 provides its own finite punishment range, we hold that the HFOA cannot be applied to enhance a conviction for child abuse under § 26-15-3. Therefore, Kennedy's sentence was improperly enhanced, and this cause is remanded for the trial court to resentence her within the range provided for in § 26-15-3. Due return shall be made to this Court within 35 days of the release of this decision.
REMANDED WITH DIRECTIONS.[*]
McMILLAN, P.J., and SHAW, J., concur. WISE, J., concurs specially, with opinion, in which BASCHAB, J., joins.
WISE, Judge (concurring specially).
I reluctantly concur with the majority's conclusion that because child abuse under § 26-15-3, Ala.Code 1975, is not a crime encompassed within Title 13A, the Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975, cannot be applied to enhance Kennedy's conviction. I believe, however, that the legislature, in enacting § 13A-5-9, Ala.Code 1975, intended to subject "repeat felony offenders"regardless of the offenseto increasingly harsher sentences based on their multiple convictions. Unfortunately, as currently written, a person convicted of child abuse under § 26-15-3 would not be subject to the sentence-enhancement provisions found in § 13A-5-9even if that person has multiple prior felony convictionsand is therefore exempt from facing increasingly harsher penalties as a recidivist child abuser. Moreover, a person with no felony convictions under Title 13A, but with multiple convictions for child abuse pursuant to § 26-15-3, would not be subject to the sentence-enhancement provisions for recidivists provided in § 13A-5-9.
Presently, a defendant convicted under Title 13A of assaulting a child would be subject to having his or her sentence enhanced under § 13A-5-9, but a defendant convicted of child abuse pursuant to § 26-15-3the statute specifically enacted for the protection of childrenwould face no such sentence enhancement. Certainly, the legislature did not intend such an illogical result. I, therefore, strongly urge the legislature to amend § 13A-5-9 so as to broaden its scope beyond Title 13A or to transfer the provisions of Chapter 15 of Title 26 to the Alabama Criminal Code in order to prevent inequities such as this from occurring in the future.
BASCHAB, J., joins.
NOTES
[1] Kennedy's prior convictions did not involve crimes of violence or child abuse.
[2] C.J. had been staying with his father in Mobile, Alabama, but had returned to live with Kennedy just days before the incident in question. Kennedy had two other children, both adolescents, who lived with Kennedy's mother.
[3] Defense counsel is referring to a videotape of C.J.'s statements to Israel.
[4] Section 32-10-6 states:

"Every person convicted of violating Sections 32-10-1 through 32-10-5 or any of the provisions thereof, when such violation involved only damage to property, shall be punished the same as prescribed by law for a Class A misdemeanor; provided, however, that every person convicted of violating such sections, or any provisions thereof, when such violation involved death or personal injury, shall be punished the same as prescribed by law for a Class C felony."
[*] Note from the reporter of decisions: On August 5, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On September 9, 2005, that court denied rehearing, without opinion. On November 10, 2005, the Supreme Court denied certiorari review, without opinion (1041941).